Paul Livoli, Inc. *v.* Planning Board of Marlborough.

There was also testimony that the fence interfered, or might interfere, with the proper plowing of the way by the city after snow storms and possibly with other municipal services (e.g. fire protection and collection of rubbish).

We assume that (1) the use of the way as a "lovers' lane" and for parking of automobiles unconnected with any use of the houses on the way, and (2) the unreasonable piling of snow on the defendants' land, may be enjoined as a trespass and a nuisance. See *Opinion of the Justices,* 297 Mass. 559, 564; *Loosian* v. *Goudreault,* 335 Mass. 253, 255–256. Cf. *Commonwealth* v. *Dobbins,* 344 Mass. 272, 274–275. Nevertheless, the circumstances which would require such relief do not warrant the defendants in constructing a fence which the trial judge, upon the evidence, justifiably found to impede unreasonably the orderly flow of traffic, the necessary plowing of snow, and the use of fire apparatus in an emergency. The defendants may not thus impede the access to the subdivision lots which the way was designed to afford.

*Final decree affirmed with
costs of appeal.*

---

PAUL LIVOLI, INC. *vs.* PLANNING BOARD OF MARLBOROUGH.

Middlesex.   December 2, 1963. — April 16, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Subdivision Control.   Equity Jurisdiction,* Subdivision control.

Reading G. L. c. 41, § 81BB, relating to appeals to the Superior Court from decisions of planning boards concerning subdivision plans, with § 81S, as amended through St. 1959, c. 189, relating to the submission of preliminary plans of subdivisions, no appeal lies under § 81BB from a decision of a planning board concerning a preliminary plan. [333–335]

A planning board had no right to refuse to receive a definitive plan of a subdivision properly submitted for its approval under G. L. c. 41, § 81U, merely because the board had disapproved a preliminary plan from which the definitive plan had "evolved" and which the subdivider had

chosen to submit to it under § 81S, as amended through St. 1959, c. 189; in the circumstances, the subdivider should be given an opportunity to resubmit the definitive plan, and such plan should be received and considered by the proper authorities as though it had been received at the time of the original submission. [335–336]

A preliminary subdivision plan of land submitted under G. L. c. 41, § 81S, must comply substantially with the definition of preliminary plan in § 81L in order to have applicable thereto the benefits of c. 40A, § 7A, respecting governing provisions of the zoning ordinance or by-law, and of c. 41, § 81Q, respecting governing subdivision control rules and regulations of the planning board. [336]

BILL IN EQUITY filed in the Superior Court on June 28, 1960.

The defendant appealed from an interlocutory decree by *Rose, J.,* overruling a demurrer and from a final decree by *Murray, J.,* after hearing on a master's report.

*Morris Shapiro* for the defendant.

*William S. Monahan* for the plaintiff.

SPALDING, J. This is a bill in equity purportedly under G. L. c. 41, § 81BB, as amended through St. 1957, c. 199, § 2, by way of appeal from a decision of the planning board of Marlborough (board) disapproving and rejecting a preliminary subdivision plan submitted to it under the provisions of G. L. c. 41, § 81S, as amended through St. 1959, c. 189, and the rules and regulations of the board.

The case was referred to a master whose findings, in part, were as follows. Paul Livoli, Inc. (Livoli), is engaged in the business of developing and subdividing land and constructing houses thereon. At some time prior to 1960, Livoli became interested in developing a certain parcel of land consisting of about 150 acres in Marlborough which were owned by one Nichols. In January of 1960, engineers and others in the employ of Livoli commenced to gather data with respect to the property with a view to preparing a preliminary subdivision plan. On the basis of the data obtained by them, a preliminary subdivision plan entitled "Forest Park at Marlborough" (Forest Park) was prepared. The required number of copies of this plan and the application for approval were filed with the board on April

18, 1960, by one Ewald, an engineer and land surveyor employed by Livoli. Notice of the filing was given to the city clerk and a copy of the plan was filed with the board of health in accordance with the regulations of the board.

On May 18, the board voted to advise the city clerk that no definitive plan of the subdivision was to be accepted by him until he had been "advised as to the disposition of the preliminary plan by the . . . [board]." Notice of this vote was received by the city clerk on May 24.

On June 9, the board voted to disapprove and reject Livoli's preliminary subdivision plan and assigned thirteen reasons for its action. The board's decision was transmitted to the city clerk in a letter of the same date. The board attached to this letter a letter dated June 8, which it had received from the board of health disapproving the plan.

At the time of the submission of the preliminary plan (April 18) the zoning ordinance here pertinent called for lots with a minimum area of 10,000 square feet and with a minimum frontage of 100 feet. By a vote of the city council on the evening of April 18, the ordinance was amended so that the minimum area was 20,000 square feet and the minimum frontage was 125 feet.

On June 23, 1960, Livoli sought, without success, to have the board reconsider its decision. On August 15, within the seven months prescribed by G. L. c. 40A, § 7A; G. L. c. 41, § 81Q, Livoli attempted to file with the board a definitive subdivision plan of Forest Park together with an application for its approval. These were refused. The board's chairman caused the following notation to be made on the letter transmitting the plan and application: "No definitive plan can be filed as preliminary plan was turned down by vote of Planning Bd."

There was no finding that Livoli attempted to file a copy of its definitive plan with the board of health as required by G. L. c. 41, § 81U, as amended through St. 1960, c. 266, § 2, within the seven month period prescribed by G. L. c. 40A, § 7A; G. L. c. 41, § 81Q.

The board demurred to the bill on the ground that there was no right of appeal from a disapproval of a preliminary plan. An interlocutory decree was entered overruling the demurrer, from which the board appealed.

After the master's report was filed the board moved (1) to strike out portions of the report, and (2) to recommit the report. These motions were denied. From these denials, which we treat as interlocutory decrees, the board appealed.[1] It also appealed from an interlocutory decree overruling its exceptions to the report. Upon the basis of the report the judge entered a final decree that the board exceeded its authority in disapproving and rejecting the preliminary plan, and annulled the decision of the board. The decree directed the board to take further proceedings in respect to the plan consistent with applicable statutes and with the terms of the decree. The board appealed.

Although the board challenges the actions of the judge relating to the master's report, the principal issues brought here by these appeals are (1) whether there is an appeal under § 81BB from the action of a planning board in disapproving a preliminary plan, and (2) if there is an appeal in such a case whether the board exceeded its authority in disapproving the plan.

Section 81BB, on which this appeal is grounded, provides in part that "[a]ny person . . . aggrieved . . . by any decision of a planning board concerning a plan of a subdivision . . . may appeal to the superior court sitting in equity for the county in which the land concerned is situated . . . ." The words "any decision" in this section might at first blush appear broad enough to permit an appeal from a planning board's decision concerning a preliminary plan. But § 81BB must be read with § 81S which deals with the subject of preliminary plans. Section 81S concludes as follows: "Except as is otherwise expressly provided, the provisions of the subdivision control law relating to a plan shall not be applicable to a preliminary plan

---

[1] See *Bressler* v. *Averbuck*, 322 Mass. 139, 143.

. . . .'' Section 81BB is one of the ''provisions of the sub-division control law relating to a plan'' and it is not expressly made applicable to decisions of a planning board concerning preliminary plans. Section 81BB, therefore, affords no basis for an appeal from a decision relating to a preliminary plan.

Both the statutory history of these provisions and logic support this construction. The provision allowing preliminary plans (now § 81S) was first added by St. 1947, c. 340, § 4. The planning board was allowed to give only tentative approval, with or without suggested modifications. Board action at this stage was not intended to be binding; rather it was merely a step toward a final decision which would later be made on a complete and detailed definitive plan. See 65 Harv. L. Rev. 1226, 1229. The various statutory provisions relating to definitive plans, including the appeal provision, were not to be applicable to the preliminary plans.[2] Since no final determination could be made at this preliminary stage of the proceedings there was no need to provide for an appeal.

By St. 1958, c. 206, § 1, G. L. c. 41, § 81L, was amended by adding a detailed definition of a preliminary plan. By § 2 of the 1958 statute § 81S was amended to allow the board to disapprove a preliminary plan. The purpose of this power to disapprove is not clear; the power may have been added to relieve a planning board from the burden of making extensive recommendations with respect to a plan which was palpably defective. No changes, by the 1958 statute, were made in the appeal section, 81BB, and the provisions in § 81S still operated as a bar to an appeal on matters concerning a preliminary plan. The 1958 statute, however, amended § 81Q by adding the following provision: ''When a preliminary plan referred to in section eighty-one S has been submitted to a planning board, and written notice of the submission of such plan has been given to the city or town clerk, such preliminary plan and the definitive plan

---

[2] Section 81L (the predecessor of § 81S) provided in part: ''The provisions of sections eighty-one K to eighty-one U, inclusive, in regard to plats shall not be applicable to a preliminary plat.'' The appeal section, then 81T, was thus expressly excluded.

evolved therefrom shall be governed by the rules and regulations relative to subdivision control in effect at the time of the submission of the preliminary plan, provided that the definitive plan is duly submitted within seven months from the date on which the preliminary plan was submitted." By St. 1959, c. 221, amending G. L. c. 40A, § 7A, substantially similar provisions relating to zoning ordinances and by-laws were added.

The purpose of these provisions is plain. They are designed to give an applicant who has filed a preliminary plan the benefit of subdivision control regulations and zoning ordinances which were in effect at the time the preliminary plan was filed, and he was not to lose these rights by a disapproval of the preliminary plan. The power to disapprove a preliminary plan was to have no effect on such rights provided the applicant submitted, pursuant to § 81U, a definitive plan "evolved" from the preliminary plan within the seven month period. Thus it was not unreasonable to provide that an applicant was to have no appeal from any action taken on his preliminary plan.

It follows that the bill in equity by way of appeal from the board's decision disapproving the preliminary plan cannot be maintained and the defendant's demurrer should have been sustained.[3]

As stated above, the board refused to receive the definitive plan submitted by Livoli in August, 1960. There is no right to refuse to receive a definitive plan submitted properly under § 81U merely because a preliminary plan filed under § 81S, a permissive procedure, is disapproved. Where an applicant has been denied the right to file a definitive plan, the failure of the proper authorities to act on his plan within the time limit provided in § 81U can be treated as an approval of it. The applicant, however, must submit his definitive plan to both the planning board and the board of health in order to comply with § 81U. The

---

[3] We have not overlooked the fact that an appeal from a disapproval of a preliminary plan was entertained in *Francesconi* v. *Planning Bd. of Wakefield*, 345 Mass. 390. But an examination of the original papers in that case reveals that no question as to the right of appeal was before the court.

master's report indicates that Livoli attempted to submit its definitive plan to the planning board. There is no finding one way or the other as to whether Livoli filed or attempted to file the plan with the board of health. Livoli might well have concluded that in view of the board's refusal to receive its plan it would have been futile to submit the plan to the board of health. In the circumstances we think that Livoli should have an opportunity to resubmit its definitive plan pursuant to the provisions of § 81U and that such plan, if submitted within thirty days from the date of the rescript, should be received and considered by the proper authorities as though it had been received in August, 1960.

As the question is likely to arise later, we deem it appropriate to state briefly our views on the issue whether the plan filed on April 18, 1960, was a "preliminary plan" within the meaning of c. 40A, § 7A, and c. 41, § 81Q. See *Wellesley College* v. *Attorney Gen.* 313 Mass. 722, 731. A preliminary plan is defined in c. 41, § 81L, and in order to obtain the benefits of c. 40A, § 7A, and c. 41, § 81Q, a preliminary plan which complies substantially with that definition must be submitted. We believe the plan submitted on April 18, 1960, by Livoli substantially complied with the definition of a preliminary plan in § 81L. None of the defects mentioned in the board's disapproval of the plan is sufficient to place that plan outside the definition set forth in § 81L, and most of them do not merit discussion. There was a sufficient indication of the record owner to satisfy the requirements of part (b) of the definition; and the listing of abutting landowners was sufficient to comply with part (c) in view of the inadequacy of the local tax list. Other deficiencies listed indicated only a desire for a more detailed elaboration of the plan than was provided.

The interlocutory decree overruling the demurrer is reversed and a new decree sustaining the demurrer is to be entered. The final decree is reversed and a new decree is to be entered dismissing the bill.

*So ordered.*