United Reis Homes, Inc. & others *vs.* Planning Board of Natick.

Middlesex.    April 7, 1971. — June 11, 1971.

Present: Tauro, C.J., Spiegel, Reardon, Quirico, & Braucher, JJ.

*Subdivision Control.    Health, Board of.    Public Health.*

Under §§ 81M and 81U of G. L. c. 41, the planning board of a municipality is empowered to incorporate in its approval of a subdivision plan of land reasonable conditions recommended by the board of health relating to drainage. [623]

Upon an appeal to the Superior Court in a suit in equity under G. L. c. 41, § 81BB, by owners of a tract of land, a subdivision plan of which was approved by the planning board of the town subject to certain requirements of the board of health, findings by the trial judge, that two of such requirements, one that a brook running through a portion of the tract be piped underground, and the other that certain lots be filled with gravel to a specified distance from an abutting roadway, were necessitated by considerations of safety and health and were not unreasonable were warranted by reported evidence [624]; and a further finding by the judge, that the amount and extent of a performance bond which the board of health insisted be posted to secure satisfactory completion of such work were not unreasonable, was justified in the circumstances [625]; and the final decree, adjudging that the planning board's adoption of such requirements in its approval of the plan was within its authority, was affirmed on appeal [622, 625].

Bill in equity filed in the Superior Court on December 1, 1966.

The suit was heard by *Tomasello,* J.

*Murray G. Shocket* for the plaintiffs.

*Jerry J. DiGeronimo* for the defendant.

Braucher, J.    The plaintiffs are the owners of a tract of land in Natick.    In August, 1966, they filed with the

planning board a proposed subdivision plan for the tract, and after a public hearing the planning board in November, 1966, approved the plan, subject to certain requirements of the board of health. Claiming that those requirements were unreasonable and beyond the authority of the planning board, the owners appealed to the Superior Court under G. L. c. 41, § 81BB, as appearing in St. 1957, c. 199, § 2. The judge made a report of material facts, and the evidence is reported. The owners now appeal to this court from a decree dismissing their appeal to the Superior Court.

The judge found that the easterly portion of the tract is in and adjacent to a vast swamp area, that the "southwesterly portion has a brook of approximately 1,500 feet running through the site," and that the westerly portion is made up of comparatively high land containing some degree of ledge. The contested requirements of the board of health are that the brook be piped underground through the development, that certain lots be filled in with gravel to a distance of 200 feet from an abutting roadway, and that a performance bond of $45,000 be posted to secure satisfactory completion of the required work, the bond to be released only after completion of the work to the satisfaction of the board of health. The judge found that the safety and health of the inhabitants required these items as conditions of approval, and the decree provides that they are not unreasonable and are within the authority of the planning board.

The principal applicable statutory provisions are found in G. L. c. 41, § 81M, as amended through St. 1957, c. 265, and § 81U, as amended through St. 1965, c. 62. Section 81M includes in its statement of the purpose of the subdivision control law reference to "ensuring sanitary conditions in subdivisions." The powers of a planning board are to be exercised "with due regard . . . for securing adequate provision for . . . drainage and other requirements where necessary in a subdivision." "It is the intent of the subdivision control law that any subdivision plan filed with the planning board shall receive the approval of such board *if*

*said plan conforms to the recommendation of the board of health* and to the reasonable rules and regulations of the planning board" (emphasis supplied).

Section 81U requires that a copy of the definitive plan be filed with the board of health and that the board of health report in writing approval or disapproval. If the plan "does not comply with . . . the recommendations of the health board . . . [the planning board] shall modify and approve or shall disapprove such plan." "Before endorsement of its approval of a plan, a planning board *shall require that the construction of ways and the installation of municipal services be secured* by one, or in part by one and in part by the other, of . . . [two methods, (1) a bond or deposit, and (2) a covenant] which method may be selected and from time to time varied by the applicant" (emphasis supplied).

1. These statutory provisions make it clear that subdivision plans are to comply with reasonable recommendations of the board of health. Boards of health have plenary power to make reasonable health regulations and to remove or prevent nuisances, sources of filth and causes of sickness. G. L. c. 111, §§ 31, 122. The "Rules and Regulations Governing the Subdivision of Land" in Natick provide, in Section V C: "Lot drainage shall be as required and specified by the Board of Health." We have no doubt of the power of the planning board to incorporate in its approval of a subdivision plan reasonable conditions recommended by the board of health relating to drainage. Compare *Kay-Vee Realty Co. Inc.* v. *Town Clerk of Ludlow,* 355 Mass. 165, 169–170. We need not speculate as to circumstances in which the planning board might properly substitute its judgment for that of the board of health. See *Daley Constr. Co. Inc.* v. *Planning Bd. of Randolph,* 340 Mass. 149, 155–156; *Castle Estates, Inc.* v. *Park & Planning Bd. of Medfield,* 344 Mass. 329, 333; *Baker* v. *Planning Bd. of Framingham,* 353 Mass. 141, 144–145. Compare as to the relation of a planning board to a water board, *Rounds* v. *Water & Sewer Commrs. of Wilmington,* 347 Mass. 40, 43; *Garabedian*

v. *Water & Sewerage Bd. of Medfield, ante,* 404, 405, 406.

2. The judge found that the requirements that the brook be piped and that certain lots be filled were not unreasonable. There was testimony by the director of public health in the town that an open brook in an inhabited area becomes a natural catchall and a public health problem, that pockets of stagnant water become breeding places for vermin and mosquitoes, and that the requirements of the board of health were designed to alleviate these problems. We cannot say that the findings of the judge, based as they were on oral testimony, were plainly wrong. See *Caruso* v. *Planning Bd. of Revere,* 354 Mass. 569, 571.

3. Section 81U states that if the report of the board of health shall so require, "the approval by the planning board shall be on condition that no building or structure shall be built or placed upon the areas designated without consent by such board of health." The plaintiffs argue that the statute and the Natick regulations authorize no other assurance to the town that work required to satisfy the board of health will be completed. They also argue that the amount of the required bond is excessive, since it covers the work required by the board of health in the whole subdivision rather than the work relating to designated lots.

Section 81U provides specifically that a planning board "shall" require a bond, deposit or covenant to secure "the construction of ways and the installation of municipal services." See *Stoner* v. *Planning Bd. of Agawam,* 358 Mass. 709, 715. The lot drainage requirements now in issue are not sufficiently related to ways or to municipal services to come within that provision, and the bond requirement did not follow the statutory directions. We think that the statute did not *compel* the requirement of a bond to cover lot drainage. However, we believe the board of health had discretion to make such a requirement if reasonable in the circumstances, since it has the power instead to withhold approval of a plan until the necessary drainage work is actually completed. "Allowing a performance bond is a favor to developers, a privilege extended by the munici-

pality." See Yearwood, Accepted Controls of Land Subdivision, 45 Journal of Urban Law 217, 242–246.

Lot drainage problems, according to the testimony, often cannot be confined to the particular area on which a building is to be erected, and the board was not limited to consideration of buildings on "designated areas." In appropriate cases it might even consider adjacent areas entirely outside the subdivision. See *Lyman* v. *Planning Bd. of Winchester*, 352 Mass. 209, 212–213; *Caruso* v. *Planning Bd. of Revere*, 354 Mass. 569, 572. There was testimony to a suggestion on behalf of the board of health that a part of the subdivision be submitted as a separate subdivision, with a reduced bond, and this seems to be a reasonable mode of dealing with the problem of severability. The judge found that the amount and extent of the bond required were not unreasonable and we cannot say he was wrong.

*Decree affirmed with costs of appeal.*