LORING HILLS DEVELOPERS TRUST *vs.* PLANNING BOARD OF SALEM.

Essex. December 5, 1977. — February 6, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, & WILKINS, JJ.

*Subdivision Control. Practice, Civil,* Subdivision control appeal. *Health, Board of. Planning Board.*

A letter from the board of health of a city to its planning board respecting a definitive subdivision plan of land, even if the letter did not fully comply with G. L. c. 41, § 81U, as amended through St. 1973, c. 605, as to specific findings, reasons, or recommendations, constituted a statutory "report" of disapproval. [347-348]

Upon a review by a planning board of a municipality under § 81U of G. L. c. 41, as amended, of a definitive subdivision plan of land, if the plan "does not comply with . . . the recommendations of the health

---

board," the planning board "shall modify and approve or shall disapprove such plan." [348]

Upon an appeal in an action under G. L. c. 41, § 81BB, as amended, by the owner of land a definitive subdivision plan of which had been disapproved by the planning board of the city following a report by the board of health recommending disapproval of the plan, the question whether the reasons given for its recommendation by the board of health exceeded its authority were properly before the Superior Court, and on further appeal were properly before this court, although the board of health was not, and should have been, a party to the action. [348-350]

The provision of G. L. c. 41, § 81Q, that "no rule or regulation shall relate to the size, shape, width, frontage or use of lots within a subdivision [of land], or to the buildings which may be constructed thereon," does not forbid inquiry into those subjects by municipal planning boards and boards of health [350-351]; information about the "prospective character" of a subdivision, and the proposed grade of ways and the present and proposed drainage of lots is a proper subject of inquiry [351-352]; and subdivision regulations of the planning board of a city respecting drainage were not invalid by reason of their relation to the use of lots [352].

Upon appeal in an action under G. L. c. 41, § 81BB, as amended, from a judgment respecting a definitive subdivision plan of the plaintiff, this court reversed the judgment and ordered entry of a new judgment stating that neither the board of health nor the planning board exceeded its authority in disapproving the plan. [352]


CIVIL ACTION commenced in the Superior Court on May 14, 1975.

The case was heard by *Mitchell, J.*

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Timothy J. O'Keefe (Michael D. Kelly* with him) for the plaintiff.

*James T. Ronan & William J. Tinti* for the defendant.

BRAUCHER, J. We here review the disapproval of a subdivision plan by a board of health and a planning board under G. L. c. 41, §§ 81K-81GG,[1] the subdivision control law. In summary, we reach the following conclusions. (1) The ac-

---

[1] As amended through St. 1973, c. 605.

tion of the board of health, whether or not proper, amounted to a report of disapproval under § 81U, rather than a failure to report, to be "deemed approval" by the board. (2) A planning board may not override an adverse recommendation in such a report. (3) A statutory appeal under § 81BB may place in issue the validity of the recommendation of the board of health. (4) The prohibition in § 81Q against planning board regulations that "relate to the size, shape, width, frontage or use of lots within a subdivision, or to the buildings which may be constructed thereon" does not bar either board from seeking information with respect to those matters. (5) The result is that neither board exceeded its authority in disapproving the plan.

On July 3, 1974, the plaintiff filed a preliminary subdivision plan for some eighty-one acres of land in Salem. That plan complied substantially with the definition of "preliminary plan" in § 81L. On July 11, 1974, the planning board rejected the plan. Within the seven months provided in § 81Q and in G. L. c. 40A, § 7A,[2] on January 31, 1975, the plaintiff filed a definitive subdivision plan. On February 27, 1975, the board of health notified the plaintiff that it could not approve the plan until specified information was obtained. After a public hearing, within an agreed extension of time, the planning board, on April 28, 1975, filed with the city clerk a certificate that it had disapproved the definitive plan for eight stated reasons. On May 14, 1975, the plaintiff filed in the Superior Court the complaint in the present action, seeking annulment of the action of the planning board and declaratory relief. No question has been raised as to the plaintiff's capacity to maintain this action.

Trial of the action in the Superior Court began on September 15, 1975, but was suspended for submission of a modified plan. On September 19, 1975, the plaintiff filed a modified definitive plan. The board of health on October 16, 1975, recommended to the planning board that the modi-

---

[2] Replaced, effective January 1, 1976, by G. L. c. 40A, § 6, inserted by St. 1975, c. 808, § 3.

fied plan be disapproved. The board of health found that none of the lots shown on the plan could be used for building sites without injury to the public health, giving as reasons the defective condition of sewer lines affected by the subdivision and problems of drainage as to a flood prone area encompassed in the subdivision. On October 29, 1975, the planning board disapproved the modified plan, giving reasons under the headings (a) safety in ways, (b) parks and open space, (c) drainage and sanitary conditions, (d) board of health, and (e) zoning compliance.

Trial of this action was resumed in November, 1975, and the judge filed findings of fact, rulings of law, and order for judgment on January 22, 1976. The pleadings do not appear to have been amended, but the trial and the judge's findings, rulings, and order dealt with the modified definitive plan rather than the original definitive plan. The judge ruled that the report of the board of health of October 16, 1975, did not include the specific findings and reasons required by § 81U, that the proposed subdivision was to be serviced by a municipal sewerage system, and that since the required report had not been made within forty-five days after the modified plan was filed the modified plan was deemed approved by the board of health. Alternatively, he ruled that the reasons given by the board of health for recommending disapproval were beyond its authority. He also ruled that the reasons given for disapproval by the planning board exceeded its authority, except for certain inadequacies with respect to parks and open spaces.

The plaintiff filed a second modified definitive plan to comply with the judge's ruling as to parks and open spaces. The planning board disapproved that plan on the same grounds as before, except that disapproval as to parks and open spaces was modified. A final judgment was entered on February 18, 1976, declaring that the planning board exceeded its authority and annulling its action in disapproving the plan. As amended the judgment made it clear that the reference was to the second modified plan. On appeal the Appeals Court reversed the judgment, relying on its decision

in *Fairbairn* v. *Planning Bd. of Barnstable,* 5 Mass. App. Ct. 171 (1977). A new judgment was ordered, stating that the planning board did not exceed its authority. 5 Mass. App. Ct. 813 (1977). We allowed the plaintiff's application for further appellate review.

1. *The "report" of the board of health.* Pursuant to § 81U, the plaintiff filed with the board of health copies of its original definitive plan and of the first modified definitive plan. Under § 81U the board of health "shall report to the planning board in writing approval or disapproval of said plan, and in the event of disapproval shall make specific findings as to which, if any, of the lots shown on such plan cannot be used for building sites without injury to the public health, and include such specific findings and the reasons therefor in such report, and, where possible, shall make recommendations for the adjustment thereof, provided, however, if a municipal sewerage system will service the proposed subdivision, then failure of the board to make such a report within forty-five days after the plan is filed with their office shall be deemed approval by such board . . . . Such health board . . . shall send a copy of such report, if any, to the person who submitted said plan."

The judge ruled that the board of health, in disapproving the plaintiff's first modified plan, did not make the required findings, or include in its report the required findings and reasons, or make the required recommendations. Since the required report was not made in time, he ruled, the failure to make it was "deemed approval." That ruling was in error. Under a comparable provision of § 81U, in the absence of an agreed extension of time, a failure of the planning board to take final action on a plan within sixty days after its submission is "deemed to be an approval thereof." We have held that a disapproval by the planning board is not a nullity even though the requirements of the statute are violated. *Pinecrest, Inc.* v. *Planning Bd. of Billerica,* 350 Mass. 336, 337-339 (1966) (failure to give required notice; inadequate statement of reasons). *Doliner* v. *Planning Bd. of Millis,* 343 Mass. 1, 3-5 (1961) (failure to hold required

hearing). *Pieper* v. *Planning Bd. of Southborough*, 340 Mass. 157, 161 (1959) (same). Contrast *Kay-Vee Realty Co.* v. *Town Clerk of Ludlow*, 355 Mass. 165, 168 (1969) (failure to file certificate of planning board action); *Selectmen of Pembroke* v. *R. & P. Realty Corp.*, 348 Mass. 120, 124-127 (1964) (same); *Paul Livoli, Inc.* v. *Planning Bd. of Marlborough*, 347 Mass. 330, 335-336 (1964) (refusal to receive plan); *Pierce* v. *Town Clerk of Rochester*, 3 Mass. App. Ct. 728 (1975) (refusal to consider plan). We think the letter of the board of health dated October 16, 1975, whether or not it fully complied with § 81U, was sufficient to constitute a statutory "report" of disapproval, rather than a nullity. We do not pass on the question whether the board of health letter of February 27, 1975, stating that it could not approve the plaintiff's original definitive plan unless more information was obtained, was such a "report."

2. *Review by the planning board of the board of health report.* In *United Reis Homes, Inc.* v. *Planning Bd. of Natick*, 359 Mass. 621, 623 (1971), we did not "speculate as to circumstances in which the planning board might properly substitute its judgment for that of the board of health." In *Fairbairn* v. *Planning Bd. of Barnstable*, 5 Mass. App. Ct. 171, 173-174 (1977), however, the Appeals Court said, "A planning board may not approve a subdivision plan which does not comply with the recommendation of the board of health; the planning board's options in such a case are limited to those of disapproving the plan or modifying it in such fashion as to bring it into conformity with the recommendation of the board of health." We agree. Under § 81U, if the plan "does not comply with . . . the recommendations of the health board," the planning board "shall modify and approve or shall disapprove such plan." Cf. § 81M.

3. *Judicial review of the board of health report.* In *United Reis Homes, Inc.* v. *Planning Bd. of Natick*, 359 Mass. 621, 623-625 (1971), we had "no doubt of the power of the planning board to incorporate in its approval of a subdivision plan reasonable conditions recommended by the board of health relating to drainage." We there reviewed

the findings of the trial judge, based on oral testimony, that the requirements of the board of health were not unreasonable, and we affirmed his decision because those findings were not plainly wrong. Our decision is an illustration of judicial review of recommendations of a board of health in an appeal under § 81BB from a decision of a planning board. We think the *United Reis Homes* case is authority for similar review of disapproval by the board of health in the present case.

In the *Fairbairn* case, *supra* at 180-181, however, the Appeals Court carefully considered the appropriate mode of review of a board of health disapproval of a subdivision plan. That court concluded that the adverse recommendation of the board of health was not part of a "'decision' of a planning board" within the meaning of § 81BB, since the planning board was powerless to review the decision of the board of health. Hence, the Appeals Court said, "the developer may, in conjunction with an appeal" under § 81BB, "maintain an action in the nature of certiorari against the board of health under G. L. c. 249, § 4." In such an action the developer could "test the sufficiency of the evidence adduced before the board of health" to support the findings of the board; the board would therefore be required, if the developer so requested, to conduct an adjudicatory hearing, and it would run "a serious risk of having its recommendation annulled by a court" unless it maintained a complete record of the evidence adduced.

In view of the *Fairbairn* decision, we have reconsidered our decision in the *United Reis Homes* case and the appropriate procedure for review of the board of health decision in the present case. We have no doubt that certain questions were properly before the Superior Court and are properly before us:[3] whether the board of health was required to report within forty-five days, and whether its

---

[3] The board of health should have been made a party in the Superior Court, but was not. In view of the result we reach, the nonjoinder makes no difference.

failure to make its report within the required time resulted in a constructive approval. More troublesome is the question whether the reasons given by the board of health for recommending disapproval exceeded its authority. On reconsideration we adhere to our decision in the *United Reis Homes* case and hold that the latter question was also properly before the Superior Court and is properly before us.

We recognize the difficulty in characterizing the decision of the board of health as a decision of the planning board. We also agree with the Appeals Court that it would be good practice to make the board of health a party to the review proceeding if its decision is to be in issue. But the ancient prerogative writs carry with them unnecessary traditional baggage. We see no need for two lawsuits and a motion to consolidate when one lawsuit will do. The board of health can be joined as a party to a proceeding under § 81BB, pursuant to Mass. R. Civ. P. 20 (a), 365 Mass. 766 (1974). The scope of review of the decision of the board of health should be the same as the scope of review of the planning board decision. There is no great need to force local boards, often composed of laymen, into the expensive and time-consuming procedures characteristic of courts. We therefore treat the recommendation of the board of health, when followed, as it must be, by the planning board, as part of the "decision of a planning board," subject to review under § 81BB. See Adams, Judicial Review Under Subdivision Control Law, 61 Mass. L.Q. 70, 73 (1976).

4. *Demands for information.* The disapprovals of both the board of health and the planning board rested in part on the plaintiff's failure to supply information called for by the planning board's regulations promulgated under § 81Q. The plans showed eighty-one acres divided into eight lots, which could accommodate 2,532 dwelling units and about 6,000 people. Both boards requested information relating to dwelling size, type, location, and population for purposes of analysis of sanitary and storm sewer systems and the water system. The planning board also asked for a topographical map showing proposed grades at two-foot contours and an

impact statement as to effect on schools, police and fire protection, traffic patterns, and other municipal services. The plaintiff did not furnish the information requested.

The judge ruled that the regulations requiring the requested information were invalid under the provision of § 81Q that "no rule or regulation shall relate to the size, shape, width, frontage or use of lots within a subdivision, or to the buildings which may be constructed thereon. . . ." But we read the quoted portion of § 81Q to prohibit regulation of the subjects mentioned rather than to forbid inquiry about them. The regulations may require the developer to supply information reasonably necessary to enable the boards to perform their duties. For example, § 81Q provides that, in establishing requirements regarding ways, "due regard shall be paid to the prospective character of different subdivisions, whether open residence, dense residence, business or industrial, and the prospective amount of travel upon the various ways therein, and to adjustment of the requirements accordingly." In applying such requirements, we think the developer may be required to furnish information about the "prospective character" of the subdivision, even though the information in a sense "relates" to the "use of lots" within the subdivision. So here, we think both boards could properly inquire into proposed grades and other information reasonably necessary to evaluate drainage. *United Reis Homes, Inc.* v. *Planning Bd. of Natick,* 359 Mass. 621, 623-624 (1971). The fact that such information in a sense relates to the use of lots does not invalidate the regulations.

The judge characterized the board's requests as seeking "a definitive final use of the locus." We agree that it would often be premature and unreasonable to require the developer to settle on particular uses before his plan is approved. Cf. *Fairbairn* v. *Planning Bd. of Barnstable,* 5 Mass. App. Ct. 180, 183-185 (1977). But if he wishes to retain the option to develop the locus in alternative ways, he may be required to disclose enough information about each alternative to enable the boards to perform their duties. There is

no showing in the present case that the plaintiff supplied the needed information with respect to any alternative.

5. *Conclusion.* The judge found that the drainage of the locus was not adequate to meet the requirements of the Salem subdivision regulations with respect to proposed topography, but ruled that those regulations were invalid. We hold that the regulations are not invalid by reason of their relation to the use of lots, and that the local boards could properly inquire into proposed drainage as well as present drainage. It follows that neither the board of health nor the planning board exceeded its authority in disapproving the plan. See *Mac-Rich Realty Constr., Inc.* v. *Planning Bd. of Southborough,* 4 Mass. App. Ct. 79, 84-85 (1976). We need not consider the other reasons given by the two boards for their disapprovals.

The judgment of the Superior Court is reversed. A new judgment is to be entered stating that neither the board of health nor the planning board exceeded its authority in disapproving the plaintiff's plan, and that the clerk of the court within thirty days after the entry of the judgment send an attested copy thereof to the planning board.

*So ordered.*