LEO GALLITANO & another *vs.* BOARD OF SURVEY
AND PLANNING OF WALTHAM.

Middlesex.   March 12, 1980. — July 14, 1980.

Present: ARMSTRONG, BROWN, & KASS, JJ.

*Subdivision Control.*

In the circumstances, a city's planning board was without authority to de-
cline to endorse a plan as a plan not requiring approval under the Sub-
division Control Law on the basis that, despite literal compliance of
each lot with the applicable area and frontage requirements, the plan
would leave certain of the lots without easy access to utility and
municipal services and, as to one of the lots, would create a traffic
hazard. [271-273]

The decision of the Supreme Judicial Court in *Gifford* v. *Planning Bd. of
Nantucket,* 376 Mass. 801 (1978), was not intended to broaden the
powers of planning boards and, in general, should not be read as ap-
plying to a plan in which the buildable portion of each lot is connected
to the required frontage by a strip of land not narrower than the re-
quired frontage at any point. [273-274]

CIVIL ACTION commenced in the Superior Court Depart-
ment on February 28, 1979.

The case was heard by *Ronan,* J.

*Robert J. Brophy,* Assistant City Solicitor, for the defend-
ant.

*Peter B. Collins* for the plaintiffs.

ARMSTRONG, J.   The plaintiffs, Leo and Mary Gallitano,
own a parcel of land in Waltham containing 7.048 acres
and numbered 595 Beaver Street.   On January 28, 1979,
they submitted to the defendant board a plan showing a
four-way division of the parcel, requesting that it be en-
dorsed under G. L. c. 41, § 81P, as a plan not requiring ap-
proval.   After a hearing the board, on February 9, 1979,
declined to give the requested endorsement.   The Gallitanos

appealed under G. L. c. 41, § 81BB, to the Superior Court. On July 24, 1979, a judge of that court entered a judgment under Mass.R.Civ.P. 56, 365 Mass. 824 (1974), ordering that the requested endorsement be given. The case is before us on the board's appeal from that judgment.

Facts which are, in our opinion, decisive of the appeal are not in dispute. The proposed division, shown in rough diagram in figure one, would divide the Gallitanos' parcel into four lots (1A, 1B, 1C, and 1D), each meeting the requirements of the Waltham zoning ordinance for a buildable lot in the residential district where the parcel is located. The ordinance specifies no minimum frontage requirement; each of the lots has frontage on Beaver Street, an accepted public way, for a distance not less than the twenty feet specified in G. L. c. 41, § 81L. Measured against the literal requirements of § 81L, therefore, the Gallitanos' plan does not show a subdivision. Compare

FIGURE ONE

*Waldor Realty Corp.* v. *Planning Bd. of Westborough,* 354 Mass. 639, 641 (1968).

The board supported its motion for summary judgment with affidavits of city officials responsible for fire and police protection, traffic control, and public works. These affidavits, apparently inspired by and geared to the analysis in *Gifford* v. *Planning Bd. of Nantucket,* 376 Mass. 801 (1978), sought to establish that, despite literal compliance of each of the lots with the applicable area and frontage requirements, the plan, if followed, would leave certain of the lots without access (or without easy access) to utility and municipal services. Lot 1A, with forty feet of frontage, was mentioned in this regard; but principal attention focused on lot 1B. That lot has a twenty-foot frontage and is no wider (or narrower) than twenty feet, measured by shortest distance from sideline to sideline, for a distance of seventy-six feet, roughly, from Beaver Street. The lot then widens to permit compliance with the width and side yard requirements (100 feet and twenty feet, respectively) for buildable lots in the relevant zoning district. Treating the twenty-foot strip as an access driveway, the affidavits claimed that it intersected the street at so acute an angle (see figure 2) as

to make entrance by a westbound vehicle difficult or impossible unless the vehicle should cross the centerline of Beaver Street or, alternatively, stop and back up. The drive was said to be necessarily "blind . . . to . . . oncoming westerly traffic" and to create a traffic hazard in light of heavy traffic on Beaver Street.[1] The affidavits asserted that houses built on lots 1A and 1B would likely be invisible from the road and that this would jeopardize fire and police protection in emergencies. The cost of running gas, electric, water and sewer lines was said to be inordinately high.[2] One affiant, the chairman of the defendant board, concluded that lots 1A and 1B have "too narrow a frontage, too long a neck, and enter . . . Beaver Street at too acute an angle.

It is obvious that all of the difficulties complained of are possible even in municipalities which require minimum frontage but which do not regulate the widths or angles of driveways and do not limit the setbacks of dwellings or require that they be visible from the street.[3] It is equally obvious that a zoning ordinance which, like Waltham's, requires building lots to be one hundred feet wide but allows them to have as little as twenty feet of frontage contemplates that some degree of development will be permissible on back lots exempt from planning board control. Such is the choice made by a municipality which fails to expand the twenty-foot minimum frontage requirement of G. L. c. 41, § 81L. If not a conscious choice, but merely an omission, it is probably one beyond the power of a planning board to rectify: for a planning board controls development princi-

---

[1] The difficulties asserted in these affidavits seem mitigated to some extent by the thirteen-foot separation, shown in figure 2, between the lot lines and the Beaver Street curbing, permitting a twenty-foot wide driveway to be perpendicular to the traveled portion of the street for a distance of thirteen feet from the intersection. The thirteen-foot strip was presumably intended to accomodate a tree belt and sidewalk.

[2] Presumably such costs would be borne by the landowner or utility company, not by the city.

[3] We are unaware of any municipalities which impose such requirements.

pally through its regulations, *Canter* v. *Planning Bd. of Westborough,* 4 Mass. App. Ct. 306, 308-309 (1976), and it is powerless to pass regulations governing "the size, shape, width, [or] frontage . . . of lots." G. L. c. 41, § 81Q, as amended through St. 1969, c. 884, § 3. See *Loring Hills Developers Trust* v. *Planning Bd. of Salem,* 374 Mass. 343, 350-351 (1978).

*Gifford* v. *Planning Bd. of Nantucket, supra,* on which the board relies, involved a plan showing a division of a parcel into forty-six lots, each meeting the frontage and area requirements of Nantucket's zoning by-law, but only by means of long, narrow connector strips, some over a thousand feet long, some narrowing to as little as seven feet in places, some containing changes of direction at angles as sharp as twelve degrees. Holding that such a plan was "an attempted evasion" and should be treated as one showing a subdivision, the court stated: "We stress that we are concerned here with a quite exceptional case: a plan so delineated that within its provisions the main portions of some of the lots are practically inaccessible from their respective borders on a public way." 376 Mass. at 808-809. The plan before us is qualitatively different: access is not impossible or particularly difficult for ordinary vehicles, and such difficulty as there is seems implicit in a zoning scheme which allows frontage as narrow as twenty feet. To permit the board to treat such a plan as subject to their approval would be to confer on the board the power to control, without regulation, the frontage, width, and shape of lots. The *Gifford* case, if we read it correctly, was not intended thus to broaden the powers of planning boards. The *Gifford* case *does* preclude mere technical compliance with frontage requirements in a manner that renders impossible the vehicular access which frontage requirements are intended in part to ensure; it does not create a material issue of fact whenever municipal officials are of the opinion that vehicular access could be better provided for. As a rule of thumb, we would suggest that the *Gifford* case should not be read as applying to a plan, such as the one before us, in which the

buildable portion of each lot is connected to the required frontage by a strip of land not narrower than the required frontage at any point, measured from that point to the nearest point of the opposite sideline. See also *Cassani* v. *Planning Bd. of Hull,* 1 Mass. App. Ct. 451, 452-453 (1973).

Under G. L. c. 41, § 81BB, as appearing in St. 1957, c. 199, § 2, costs are not to be allowed against a planning board "unless it shall appear that [the] board acted with gross negligence or in bad faith." No such showing was made in this case.

The judgment is amended by striking the award of costs. As so amended, the judgment is affirmed.

*So ordered.*