S. FRANCIS VITALE, trustee, vs. PLANNING BOARD OF
NEWBURYPORT.

Essex.   May 12, 1980. — September 8, 1980.

Present: HALE, C.J., KASS, & NOLAN, JJ.

*Subdivision Control,* Planning board, Board of Health. *Planning Board.
Health, Board of.*

Where a city's board of health had reported to a planning board that
it had approved a subdivision plan which was apparently submitted to
it pursuant to G. L. c. 41, § 81S, but, subsequent to the planning
board's disapproval of the plan for the reason of potential water pollu-
tion, the board of health communicated an apparent recantation of its
approval, although the approval was not formally rescinded under the
provisions of c. 41, § 81W, the application for subdivision approval
was remanded to the planning board for submission to the board of
health for consideration as provided in c. 41, § 81U. [484-488]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 18, 1979.

The case was heard by *Bennett, J.,* on motions for sum-
mary judgment.

*Richard B. Jones,* City Solicitor, for the defendant.
*David Berman* for the plaintiff.

KASS, J.   Because the proposed development might en-
danger a municipal water source, the planning board of
Newburyport (planning board) disapproved the plaintiff's
definitive plan.  G. L. c. 41, §§ 81O, 81U.  Aggrieved, the
plaintiff appealed under G. L. c. 41, § 81BB.  The
plaintiff's motion for judgment on the pleadings and the de-
fendant's cross motion for summary judgment[1] put the

---

[1] The parties and the motion judge treated the case as presented on cross
motions for summary judgment.  The plaintiff's motion for judgment on
the pleadings was converted to a motion for summary judgment.  Mass.R.

question whether the planning board had the authority to reject the plan for the reason of potential water pollution after the board of health of Newburyport (board of health) had approved it. The judge decided that issue adversely to the planning board.

In view of the procedures invoked by the parties to present the case, we may take the relevant facts from the pleadings and supporting affidavits. The board of health reported to the planning board on November 20, 1978, that it had approved the plaintiff's plan, subject to a condition about tie-in to public sewerage. Application for approval of a definitive plan was made on April 6, 1979, and the record does not disclose why the board of health had acted five months earlier. We are left to infer that the plan came to the attention of the board of health in the first instance through the submission of a plan for preliminary approval under G. L. c. 41, § 81S, as amended through St. 1964, c. 105, § 1. At some time while the definitive plan was before the planning board, the board of health appears to have made a recantation of its approval. That board, however, never formally rescinded its original approval, which was made by its director, and the only indications in the record of the board of health's change of view appear from affidavits to that effect filed by the members of the board and by its director in connection with the litigation which ensued, i.e., after the planning board had acted. The planning board has not questioned whether an approval of a preliminary plan may satisfy the requirement of report of the board of health which appears in G. L. c. 41, § 81U, as amended through St. 1978, c. 422, §§ 1 and 2 (relating to definitive plans). For purposes of this decision we assume that it does, without so deciding.

The motion judge rested his decision on two propositions: first, that a planning board lacks jurisdiction over drainage

Civ.P. 12(c), 365 Mass. 756 (1974). While neither the docket nor the record appendix reflects the filing of a motion for summary judgment by the defendant, such a motion was argued and was ruled upon by the judge.

impact outside the boundaries of a subdivision; and second, that no regulation of the planning board dealt with drainage impact outside boundaries of a subdivision except in cases where such impact would result from changes in the natural contours of the land. He found that the planning board's decision in the instant case indicated no proposed change in contours. In so deciding the judge relied on our opinion in *Fairbairn* v. *Planning Bd. of Barnstable*, 5 Mass. App. Ct. 171 (1977). We observed in that case that "the determination of all health questions *with respect to the disposal of sewage* in a subdivision . . . is vested exclusively in the board of health." *Id.* at 176[2] (emphasis supplied). We also said in *Fairbairn* that the danger of pollution to adjoining land from surface water run-off could not be a ground of refusal by a planning board where no rule or regulation of the board justified rejection for such a reason. At 177.

*Fairbairn* did not say, therefore, as the motion judge wrote and the plaintiff argues, that the potential polluting effect of a subdivision's drainage system is no concern of a planning board. While a planning board may not act on the basis of generalized community concerns, however real (see *Daley Constr. Co.* v. *Planning Bd. of Randolph*, 340 Mass. 149, 152-156 [1959]; *Pieper* v. *Planning Bd. of Southborough*, 340 Mass. 157, 162-164 [1959]; *Canter* v. *Planning Bd. of Westborough*, 4 Mass. App. Ct. 306, 308 [1976]; contrast *Hamilton* v. *Planning Bd. of Lexington*, 4 Mass. App. Ct. 802, 803 [1976]), it may enact a regulation concerning the prevention of adverse impact from the drainage system of a subdivision on property beyond the boundaries of the subdivision. See *Lyman* v. *Planning Bd. of Winchester*, 352 Mass. 209, 212-213 (1967), and cases cited in n.6; *United Reis Homes, Inc.* v. *Planning Bd. of Natick*, 359 Mass. 621, 625 (1971). The planning board's

---

[2] An amendment to § 81U made by St. 1978, c. 422, § 1, eliminated a clause which limited the consequence of a failure of the board to report on an application for approval of a definitive plan within forty-five days to subdivisions which tied into existing public sewers.

difficulty is that it has not called to attention any regulation which does so.

We turn next to the status of the board of health's approval of the subdivision plan. Such an approval is binding on a planning board as to those subjects channeled by statute for board of health review. *Patelle* v. *Planning Bd. of Woburn,* 6 Mass. App. Ct. 951 (1978). See also *Baker* v. *Planning Bd. of Framingham,* 353 Mass. 141, 144-145 (1967); *Loring Hills Developers Trust* v. *Planning Bd. of Salem,* 374 Mass. 343, 348 (1978); *Fairbairn* v. *Planning Bd. of Barnstable,* 5 Mass. App. Ct. at 173-174. It is within the board of health's power to make reasonable conditions relating to drainage. *United Reis Homes, Inc.* v. *Planning Bd. of Natick,* 359 Mass. at 623.

Except for the board of health's approval dated November 20, 1978, nothing by way of communication appeared from the board of health until after the planning board had refused to approve the definitive plan because the project, if built as shown, might pollute Newburyport's Well No. 2. We do not think that the affidavit filed in court by the board of health or the affidavit filed in court by the director of the health department of Newburyport, each of which registers unmistakable disapproval of the plaintiff's definitive plan, qualifies as a rescission of the earlier approval. Contrast *Loring Hills Developers Trust* v. *Planning Bd. of Salem,* 374 Mass. at 348 (report disapproving a plan under § 81U which did not comply with statutory requirements was not a nullity).

Both the timing and the procedural circumstances surrounding the affidavits deprive them of standing as an official action of the board of health. Formulation by a board of health of its report under G. L. c. 41, § 81U, "involves a process which is adjudicatory" and such a board is "constitutionally required to afford a developer a measure of procedural due process prior to formulating an adverse recommendation to a planning board." *Fairbairn* v. *Planning Bd. of Barnstable,* 5 Mass. App. Ct. at 181-182, and cases cited.

In the case at bar, the board of health first gave its approval on the basis of the plaintiff-developer's plans and

engineering data. What caused the board to reverse its field is unknown, although one infers from the record that an alarm was sounded by the board of water commissioners of Newburyport. To the extent the water commissioners and the board of health acted on engineering data which pointed to different conclusions from those to be drawn from data submitted by the plaintiff, the plaintiff was entitled to a hearing at which he might rebut such other data, or the conclusions to be drawn from them. An administrative agency may not make a decision on the basis of evidence obtained after the close of the administrative proceeding, see *Norway Cafe, Inc.* v. *Alcoholic Beverages Control Commn.*, 7 Mass. App. Ct. 37, 39 (1979), so surely it may not reverse a decision on the basis of evidence so obtained, as the board of health did in this case.

This is not to say that an administrative agency may not reverse itself. Due process does not require that an agency must bind itself to an error in perpetuity irrespective of the public interest. But an agency cannot revoke an approval without notice to, and an opportunity to be heard by, the parties affected. See *Cassani* v. *Planning Bd. of Hull*, 1 Mass. App. Ct. 451, 453, 456 (1973). See also Davis, Administrative Law § 18.09 (1958 ed.). We note that it is open to the planning board under G. L. c. 41, § 81W, to rescind its approval of a plan. When a planning board embarks on such a course, § 81W provides, "All of the provisions of the subdivision control law relating to the submission and approval of a plan of a subdivision shall, so far as apt, be applicable to the . . . rescission of such approval." Within that category of provisions are those appearing in § 81U which require a submission to the board of health for a report and recommendation. It would, thus, be possible for the planning board in this case to approve the plaintiff's application on the basis of the record before it and then, forthwith, to reopen the proceedings under § 81W on the basis of the material served up by the water commissioners. There would be no point to such convoluted and unseemly proceedings. It will best serve the parties if the definitive

plan is submitted to the board of health for consideration as provided in § 81U, a step never taken, for all that appears from the record. See *Doeblin* v. *Tinkham Dev. Corp.,* 7 Mass. App. Ct. 720, 721 (1979). If, after studying the definitive plan, the board of health "is disposed to disapprove the plan or to approve it subject to conditions which have not been agreed to by the developer, the board must honor the developer's request for a hearing and give him reasonable notice of the time and place thereof. The developer must be advised of all the facts and other material in the possession of the board [of health] on which it intends to rely, and he must be given the opportunity to produce all relevant evidence, to cross examine witnesses, and to present argument." *Fairbairn* v. *Planning Bd. of Barnstable,* 5 Mass. App. Ct. at 182.

The judgment shall be modified to provide that the plaintiff's application for subdivision approval shall be remanded to the planning board for further proceedings, including a submission to the board of health. The Superior Court may set the date for the commencement of proceedings before the board of health.

*So ordered.*