ROBERT WINDSOR & another[1] *vs.* PLANNING BOARD
OF WAYLAND
(and a companion case[2]).

Nos. 87-1195 & 87-1196.

Middlesex. September 19, 1988. — December 9, 1988.

Present: PERRETTA, KAPLAN, & FINE, JJ.

*Subdivision Control,* Appeal, Conditions, Decision of planning board, Plan,
Board of health. *Municipal Corporations,* Planning board, Board of
health. *Health, Board of. Planning Board.*

A subdivision plan was held to have been constructively approved by reason
of a municipal planning board's failure to file its approval letter with
conditions in the town clerk's office within the time limit specified in
G. L. c. 41, § 81U, with the result that the fifteen stated conditions
recited in the late-filed letter, including seven stated waivers of the
town's subdivision regulations, were of no effect. [653-656] FINE, J.,
dissenting.

An action challenging the constructive approval of a subdivision plan, which
was the inadvertent result of a planning board's late filing of its approval
with conditions in the office of the town clerk, was remanded to the
planning board for further proceedings under G. L. c. 41, § 81W, to
determine whether the constructive approval should be modified or
amended to include the intended conditions. [656]

A planning board's waivers of certain subdivision regulations were not
shown to be in excess of the board's powers under G. L. c. 41, § 81R,
nor were the waivers inconsistent with the intent and purpose of the
subdivision control law. [657-658]

That a planning board in approving a subdivision plan imposed some con-
ditions subject to further administrative discretion did not amount to a
disapproval of the plan [658], and the conditions stated were not too
vague of description [658].

No procedural unfairness appeared on the record of a series of hearings
held by a municipal planning board to consider a subdivision proposal.
[659]

---

[1] Lucy Windsor, his wife (No. 1195).

[2] Robert and Lucy Windsor *vs.* Planning Board of Wayland and Arthur
and Raymond DeVincent (No. 1196).

CIVIL ACTIONS commenced in the Superior Court Department on August 16, 1983, and September 12, 1983, respectively.

The cases were heard by *Hiller B. Zobel*, J., on motions for summary judgment.

*Edward J. Collins* for the plaintiffs.

*Francis E. Jenney* for the defendants.

KAPLAN, J. These are appeals in consolidated actions arising from a proceeding under the subdivision control law. The upshot of the appeals will be that the Windsors, abutters, succeed in upsetting a subdivision plan proposed by the DeVincents, owners. This success is owing to a delay in filing on the part of the planning board which inadvertently resulted in a faulty "constructive approval" of the plan. On the merits the plan as finally evolved appears valid. Upon remand it may be hoped that the planning board will reach the merits speedily and decisively.

1. *Statement.* The DeVincents have long owned a 16.21 acre unimproved tract of land adjacent, in its northeast corner, to the Windsors' homestead. Access to the tract is now principally by two rights of way, each forty feet in width, off Plain Road which lies to the north. One of the rights of way runs along the westerly boundary of the Windsors' property. Under a deed from the DeVincents to the Windsors' predecessor this was reserved for a future road; it would become a road pursuant to the subdivision plan.

On February 8, 1983, the DeVincents filed a definitive subdivision plan with the planning board which pictured thirteen house lots and two roads on the rights of way. The planning board on February 17 and 24 published the required notice for a hearing on the plan. Meanwhile, on February 17, the DeVincents submitted a first revision of their plan and, on March 4, a second. Hearings before the planning board began on March 8 and continued until May 17.

On March 11 the board of health of Wayland held a hearing on the sewage, water drainage, and run-off aspects of the plan, and by letter of March 15 it reported its disapproval, based on local public health considerations, particularly a difficulty with drainage. The DeVincents on May 9 submitted a third revision

to the planning board responsive to the health problem. This was forwarded to the board of health two days later. Without public notice, but with Robert Windsor in attendance, the board of health on May 26 reconsidered the plan revised as of May 9. After an engineer retained by the DeVincents spoke to the board of health and showed his hand drawing of the road elevations at the intersection of Plain Road and the road intended to run alongside the Windsors' property, Windsor asked time for his engineer to inspect the drawing, but his request was refused. Soon after the May 26 hearing, Windsor wrote to the board of health expressing a number of grievances, including the complaint that the elevations in the drawing would lead to more than the existing seasonal run-off from Plain Road to his property.[3] The DeVincents' engineer then sent a letter reiterating his testimony. On June 6 the board of health, by letter, approved the plan as of the May 9 revision, relying on the engineer's drawing and his defense of it and making specific reference to Windsor's concerns.

Robert Windsor on June 3 had written to the planning board attacking the subdivision plan in detail. (We note here that Windsor was a member of the planning board during the entire period, but in this matter he participated only as a private citizen.) A further revision of the plan was submitted by the DeVincents on June 6, and a last revision on July 5.

At its regular meeting on July 19 the planning board noted that a vote was due soon on the entire submission. This indeed was correct. To avoid a lapse of the then sixty-day statutory time limit for disposing finally of a subdivision plan, G. L. c. 41, § 81U,[4] the planning board had filed three notices of extension, the last filed on June 7, which brought the time limit to July 29.

On July 26 the planning board unanimously (Windsor not voting) approved the plan as revised, with fifteen stated condi-

[3] The Windsors' vigor in pursuing this matter may stem from their trouble with seasonal flooding of their basement caused by run-off from Plain Road.

[4] The statutory period has been enlarged to at least ninety days by St. 1986, c. 699, § 2.

tions, including seven stated waivers of Wayland subdivision regulations.[5] Not until August 24 did the planning board record its detailed approval letter in the office of the Wayland town clerk.

As July 29 had passed without a filing in the clerk's office, the Windsors have taken the position that the plan as originally submitted had been constructively approved by force of G. L. c. 41, § 81U, but was illegal by reason of violations of regulations which remained unwaived because the approval letter was ineffective. On this view the Windsors "appealed" to the Superior Court by filing an action there on August 16 attacking the plan in the form constructively approved (as they contend) on July 29. As a backup — in case their first contention should fail — the Windsors appealed to the Superior Court by filing a second action on September 12, attacking the planning board's approval of the revised plan with conditions as filed in the clerk's office on August 24. The Superior Court actions (consolidated by order) languished on the calendar for a considerable time. Finally a judge granted summary judgment in favor of the defendants in both actions, and we review these judgments.

2. *Problem of constructive approval.* We agree that, as filing in the clerk's office did not occur by July 29, the subdivision plan was constructively approved as of that date.

The DeVincents argue that there was no constructive approval, that the plan with conditions became effective through the planning board's vote of final approval on July 26, and that the filing with the clerk more than a month later simply saved an objector's right to initiate his appeal to the Superior Court until twenty days following that filing. It is true that the statute, G. L. c. 41, § 81U, as in effect prior to St. 1986, c. 699, § 2, uses language in a seemingly alternative sense that gives some comfort to that interpretation:

"Failure of the planning board either to take final action or to file with the city or town clerk a certificate of

---

[5] The waivers ranged from drainage regulation to regulation of curbing.

such action regarding a plan submitted by an applicant within sixty days after such submission, or such further time as may be agreed upon at the written request of the applicant shall be deemed to be approval thereof. Notice of such extension of time shall be filed forthwith by the planning board with the city or town clerk."

However, the case law expounding the text is clear and long settled — the filing must also have been accomplished by the statutory or extended date in order to avoid the consequence of a constructive approval. See *Selectmen of Pembroke* v. *R. & P. Realty Corp.*, 348 Mass. 120, 125 (1964); *Stoner* v. *Planning Bd. of Agawam*, 358 Mass. 709, 714-715 (1971).

The DeVincents do not consider what should follow if constructive approval must be taken to have occurred. Since the bulk of decisions dealing with constructive approval feature a land owner who relies upon and defends a constructive approval, e.g., *Kay-Vee Realty Co.* v. *Town Clerk of Ludlow*, 355 Mass. 165 (1969), it may appear plausible to say that such approval is only for the owner's benefit, and therefore no one can complain when the owner is prepared to accept a plan less advantageous to him, here the actually approved plan with the fifteen conditions.[6] Perhaps the judge below went on some such theory when he allowed summary judgments in the two actions.

The theory would conflict with the systematics and policy of the subdivision control law. First, the statute is inconsistent with the idea that constructive approval is simply a boon for the owner (waivable by him). For the statute permits any aggrieved person (or municipal officer or board) to attack in court a plan constructively approved through lapse of time. [General Laws] c. 41, § 81BB, as appearing in St. 1982, c. 533, § 2 provides:

---

[6] We pass over the point that the question of "advantage" is indeterminate where the plan constructively approved is vulnerable to a claim of illegality.

"Any person, whether or not previously a party to the proceedings, or any municipal officer or board, aggrieved . . . by the failure of such a board [planning board] to take final action concerning such a plan within the required time, may appeal to the superior court . . . provided, that such appeal is entered . . . within twenty days after the expiration of the required time. . . .."

Abutters, such as the Windsors, may be aggrieved persons. See *Selectmen of Pembroke*, 348 Mass. at 127 (appeal from constructive approval of definitive subdivision plan). See also *Carey* v. *Planning Bd. of Revere*, 335 Mass. 740, 743-744 (1957) (appeal from plan becoming effective after lapse of fourteen days from "approval not required" submission under G. L. c. 41, § 81P). Second, the occurrence of a constructive approval renders any subsequent filing, whether of approval or disapproval of a plan, a nullity. See *Selectmen of Pembroke*, 348 Mass. at 128; *Stoner*, 358 Mass. at 715. The law aims to attain certainty in the timing of appeals. Section 81BB starts the running of the appeal period from either the filing of a certificate of final action within the statutory (or extended) period or from the deadline for such filing if filing has not occurred. Notice of the original submission by the owner, likewise, must be filed with the clerk. By recourse to the record in the clerk's office, interested parties may learn when they must initiate appeal to the court. Insistence on the values of the regularity and reliability of the record appears often in the cases. See, e.g., *Stoner*, 358 Mass. at 715. Cf. *Building Inspector of Attleboro* v. *Attleboro Landfill, Inc.*, 384 Mass. 109, 113 (1981). The suggestion that the owner might forgo the constructive approval and embrace effectively an approved plan later filed, would create an anomalous record, an oddity outside § 81BB with respect to appeal. If one tried to appeal solely from the late-filed approved plan, the appeal would be a nullity because the plan was a nullity, leaving the constructive approval intact. See *Selectmen of Pembroke*, 348 Mass. at 127.

To sum up, "the [planning] board [has] 'blunder[ed] its way into a position where the plan became constructively ap-

proved.' " *Kay-Vee Realty Co.* v. *Town Clerk of Ludlow*, 355 Mass. at 170, quoting from *Pinecrest, Inc.* v. *Planning Bd. of Billerica*, 350 Mass. 336, 339 (1966). This is the result although the Windsors must have been aware that the planning board and the DeVincents intended to rely only upon the purported actual approval.

3. *Remand to the planning board.* Fortunately, there is a well-worn, although a rather circuitous way out of the blunder — a proceeding by the planning board pursuant to G. L. c. 41, § 81W, as amended through St. 1977, c. 473, to "modify, amend or rescind . . . or to require a change in" the constructively approved plan.[7] See *Selectmen of Pembroke*, 348 Mass. at 128; *Kay-Vee Realty Co.*, 355 Mass. at 170; *Young* v. *Planning Bd. of Chilmark*, 402 Mass. 841, 845 n.4 (1988). See also *Strand* v. *Planning Bd. of Sudbury*, 5 Mass. App. Ct. 18, 23 (1977); *Patelle* v. *Planning Bd. of Woburn*, 6 Mass. App. Ct. 951 (1978); *Vitale* v. *Planning Bd. of Newburyport*, 10 Mass. App. Ct. 483, 487-488 (1980). To prepare the way, we vacate the summary judgments in both actions and direct that fresh judgments shall be entered (1) in No. 1196 (the action attacking the actual approval) declaring the actual approval ineffective; (2) in No. 1195 (the action regarding the constructive approval) remanding that matter to the planning board so that it may, as it is best advised, undertake action pursuant to § 81W.

Proceedings for modification begin with notices of public hearing, see *Young, supra* at 844; *Patelle* v. *Planning Bd. of Woburn*, 6 Mass. App. Ct. at 951. The board may rely upon the entire record heretofore made. Cf. *Vitale* v. *Planning Bd. of Newburyport*, 10 Mass. App. Ct. at 487-488. As a practical matter, the board may frame the question before it to be whether

---

[7] Section 81W provides: "A planning board, on its own motion or on the petition of any person interested, shall have the power to modify, amend or rescind its approval of a plan of a subdivision, or to require a change in a plan as a condition of its retaining the status of an approved plan. All of the provisions of the subdivision control law relating to the submission and approval of a plan of a subdivision shall, so far as apt, be applicable to the approval of the modification, amendment or rescission of such approval and to a plan which has been changed under this section."

there is reason to deviate from the result which it sought to embody in its final approval with conditions. We discuss the merits of the revised plan as thus approved and subjoin some remarks about the procedures employed.

4. *Merits*. This subject is best considered by referring to the Windsors' objections to the plan as finally submitted, taken together with the detailed letter of approval recorded on August 24. The attack asserts: the plan violates Wayland regulations and the subdivision control law; the conditions imposed are so extensive as to amount to disapproval; the conditions are too vague.

(a) As noted, the planning board waived a number of violations of Wayland regulations, so the argument must be that these waivers exceeded the board's powers under G. L. c. 41, § 81R, as amended by St. 1955, c. 411, § 1, which states in part:

> "A planning board may in any particular case, where such action is in the public interest and not inconsistent with the intent and purpose of the subdivision control law, waive strict compliance with its rules and regulations . . . ."

As in all appeals from planning board approvals, the burden is on the objector to show error, see *Selectmen of Ayer* v. *Planning Bd. of Ayer*, 3 Mass. App. Ct. 545, 548 (1975), and in respect to "public-interest" waivers, the burden is nearly insupportable, as we held in *Arrigo* v. *Planning Bd. of Franklin*, 12 Mass. App. Ct. 802, 808 (1981).[8] It is even held that the board need not make written findings to support the waivers. See *Wheatley* v. *Planning Bd. of Hingham*, 7 Mass. App. Ct. 435, 439 n.8 (1979); *Arrigo* at 808. It is a fair characterization of the Windsors' argument that it goes no further than an attempt to show that the waivers are against their own interests, not the public's.

---

[8] Relied on by the judge below in granting the summary judgments.

Again, there is argument about the inconsistency of the waivers with the "intent and purpose" of the law. Here the standard of review is "more exacting," *Arrigo* at 809, but, in contending that minimal municipal services as required by G. L. c. 41, § 81U, are not provided in the plan, the Windsors are short on details. In that connection we note that the planning board's letter for example requires the services of street lights and fire alarms. Contrast the *Wheatley* case, at 443, where provision for a series of important or indispensable municipal services was found wanting in the approved plan.

(b) Several "conditions" of the approval letter were left to administrative discretion, e.g. tree removal and preservation to the judgment of the tree warden and planning board, installation of street lights to the planning board. The Windsors suggest that the plan was thus disapproved in substance if not in form. That is a gross distortion. Contrast *Falcone* v. *Planning Bd. of Stoughton*, 14 Mass. App. Ct. 950 (1982), where an "approval" was found bad because the developer's plan was subject to resubmission upon which the board would later act. The truly difficult problem in the present case was the drainage system which the owner and the planning board solved without recourse to future approval.

(c) Interested parties are entitled to know what is required of the owner (as, of course, is the owner himself). The claim that the approval letter is too vague in describing certain of its conditions — e.g. that the owner preserve as many trees "as possible," that owner build a retaining wall if it is "not possible" to blend the edges of the subdivision — invokes a criterion of definiteness impractical or excessively stringent for the items in question. All are made aware of what is wanted within a reasonable approximation. Cf. *Castle Estates, Inc.* v. *Park & Planning Bd. of Medfield*, 344 Mass. 329, 334 (1962); *North Landers Corp.* v. *Planning Bd. of Falmouth*, 382 Mass. 432, 439 (1981).

5. *Procedure*. With regard to the board of health: The plan it endorsed on health grounds was twice further revised before approval by the planning board. The proper practice would be to recommit to the board of health if the revision could be seen

to raise any new question within that board's purview. See *Doeblin* v. *Tinkham Dev. Corp.*, 7 Mass. App. Ct. 720, 721-722 (1979). The Windsors do not point to any such question. Another procedural issue that may be raised is how far the board may consider material submitted after the close of its hearings. Surely a party should have a fair chance to meet evidence which may be influential upon the board's decision. The "process" that is "due" the owner in this respect is considered in *Fairbairn* v. *Planning Bd. of Barnstable*, 5 Mass. App. Ct. 171, 181-182 (1977), and we may assume arguendo that similar protection ought to be accorded an objecting abutter. The Windsors fasten upon the post-hearing letter from the DeVincents' engineer. It will be enough to say that there was nothing of substance that was not made evident at public hearings or a hearing at which Robert Windsor was actively present.

Concerning the planning board's procedure: The Windsors argue that there should have been renewed hearings on the fourth and fifth revisions which were submitted by the owner after the last public hearing. That might have been useful, but Robert Windsor was aware of the successive revisions and his position was made known to the planning board. Upon the remand the board, in conducting the modification proceeding, will be sensitive to any question of procedural fairness. This is quite compatible with dispatch in disposing of this matter, already pending for nearly six years.

The judgments are vacated and new judgments are to enter in accordance with part 3 of this opinion.

In the interest of expedition, our rescript will issue forthwith.

*So ordered.*

FINE, J. (dissenting). Concerning section 2 of the opinion, I cannot see the logic of giving effect to a constructive grant when the applicant for subdivision approval is willing to accept the conditions set forth in a less favorable late-filed written decision granting the application, and no one has changed his position in the interim in good faith reliance on the constructive

grant. None of the cases cited to support the majority view involved a situation comparable to the present one. In the present situation, it is the constructive grant, rather than the later-filed decision, that should be regarded as a nullity. The public interest would be better served in general by having effect given to conditions imposed upon applicants in reasoned decisions and acceptable to them than to approvals based on official nonaction. It is difficult to see how the goals of orderliness of procedure and reliability of the public record would be adversely affected by giving effect, in such circumstances, to the actual decision. A written decision with conditions accepted by the applicant would appear in the public record. And any aggrieved party would have the right to appeal from the board's actual decision. In this case the plaintiff, having taken such an appeal, was not misled by anything in the public record.