STEVEN RATTNER *vs.* PLANNING BOARD OF WEST TISBURY
& others.[1]

No. 97-P-0684.

Dukes County. March 12, 1998. - May 28, 1998.

Present: BROWN, GREENBERG, & SPINA, JJ.

*Subdivision Control,* Access ways, Decision of planning board, Exemption.
   *Words,* "Person aggrieved."

A municipal planning board had an obligation, pursuant to G. L. c. 41, § 81M,
   and applicable subdivision rules and regulations, to consider the adequacy
   of access roads outside a proposed subdivision in deciding whether to ap-
   prove the proposed plan; an abutter to the proposed subdivision, who
   produced sufficient evidence that an increase in traffic resulting from the
   subdivision would interfere with his property rights, was a person "ag-
   grieved" within the meaning of G. L. c. 41, § 81BB, and had standing to
   appeal the board's waiver of strict compliance with the subdivision rules
   relating to road improvements. [10-13]

CIVIL ACTION commenced in the Superior Court Department on
October 4, 1995.

The case was heard by *Gerald F. O'Neill, Jr.,* J., on a motion
for summary judgment.

*Richard W. Renehan* for the plaintiff.

*Brian M. Hurley* for Margaret Smith-Burke & another.

SPINA, J. Steven Rattner appeals from a determination by a
Superior Court judge allowing a motion for summary judgment
filed by Margaret Smith-Burke and Cary S. Hart (defendants)
and dismissing Rattner's complaint for lack of standing to ap-
peal the approval of defendants' subdivision. We reverse.

The defendants own an eighty-one-acre parcel of land in
West Tisbury, adjacent to Vineyard Sound. Rattner owns a thirty-
one-acre parcel abutting the defendants' parcel to the west.[2] The

---

[1]Margaret Smith-Burke and Cary S. Hart.

[2]A relevant portion of an area map is attached as an appendix to this opinion.

defendants' subdivision plan, approved by the planning board (board) in 1995, provides for four lots. Lots 1-3 would each have one single-family house, and Lot 4 would have two houses.

The parcels owned by the parties are not located on paved public streets. Two private dirt roads provide access to the defendants' property. One of those roads (southwest road) also provides the sole access to Rattner's property.[3] In connection with the subdivision approval process, the defendants did not propose, and the board did not consider, that the southwest road would provide access to the subdivision. While the subdivision plan approved by the board "relies" on the other access road (southeast road) to provide the sole "legal" access to the subdivision, Rattner complains that the residents of the defendants' subdivision will continue to use his road (southwest road) for access and egress and that the southwest road is not suited to the extra traffic that will be generated by that use.

In allowing the defendants' motion for summary judgment and dismissing Rattner's complaint, the judge reasoned that, although Rattner had presented credible evidence to show that the southwest road would be used as access to the defendants' parcel of land, the board lacked authority under its subdivision rules and regulations to consider roads outside the proposed subdivision when deciding whether to approve the subdivision plan. In the judge's view, since the condition of the southwest road was not properly before the board, it could not form the basis for standing to appeal the board's decision.

General Laws c. 41, § 81BB, provides that any person who is "aggrieved" by any decision of a planning board relating to a

---

[3]Pursuant to the defendants' subdivision plan (and as spelled out in a protective covenant), residents of the subdivision have an easement to use the southeast road, known as Paul's Point Road and also as John Cottle Road. The southeast road connects the defendants' parcel to Lambert Cove Road, a paved public way. The southwest road, known as Obed Daggett Road, connects to Indian Hill Road, a paved public way. Ultimate access to the defendants' parcel, following either the southeast or the southwest road, is over Simon Athearn Road, a private dirt road across the southerly portion of the defendants' parcel. Simon Athearn Road also connects the southwest and the southeast roads.

Stated another way, there are two alternate routes to reach the main north/south road of the defendants' subdivision: (1) from Lambert Cove Road, travel 1.1 miles along the southeast road, turn left and continue on Simon Athearn Road for an additional .4 mile; (2) from Indian Hill Road, travel .5 mile along the southwest road, turn right and continue on Simon Athearn Road for an additional .3 mile.

subdivision plan may appeal that decision to the Superior Court. Although there have been few cases specifically defining who is an aggrieved person in the subdivision context, zoning decisions under G. L. c. 40A, § 17, provide guidance.

A plaintiff is an aggrieved person if he suffers some infringement of his legal rights. *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, 421 Mass. 719, 721 (1996). "The injury must be more than speculative, but the term 'person aggrieved' should not be read narrowly." *Ibid.* (citations omitted). An abutter enjoys the benefit of a rebuttable presumption of aggrievement. *Watros* v. *Greater Lynn Mental Health & Retardation Assn.*, 421 Mass. 106, 111 (1995). Once the abutter's standing is challenged and evidence is offered to support the challenge, the presumption recedes and the burden of proof shifts to the abutter, who must come forward with specific facts to support his assertion of status as an aggrieved person. *Ibid. Riley* v. *Janco Cent., Inc.*, 38 Mass. App. Ct. 984, 985 (1995). Abutters "must put forth credible evidence to substantiate claims of injury to their legal rights." *Marashlian*, 421 Mass. at 723.

In order to determine whether there has been, or likely will be, an infringement upon Rattner's legal rights or property interests, we consider whether the board should have evaluated the adequacy of roads outside of the defendants' proposed subdivision in deciding whether to approve their plan. Section 81M of G. L. c. 41, inserted by St. 1953, c. 674, § 7, provides that the powers of a planning board shall be exercised with "due regard" for "the provision of adequate access to all of the lots in a subdivision by ways that will be safe and convenient for travel; *for lessening congestion in such ways and in the adjacent public ways; . . . and for coordinating the ways in a subdivision with . . . the public ways in the city or town in which it is located and with the ways in neighboring subdivisions*" (emphasis added). There is no limitation in the language of § 81M that precludes a planning board from evaluating the adequacy of ways outside a proposed subdivision. *North Landers Corp.* v. *Planning Bd. of Falmouth*, 382 Mass. 432, 436-437 (1981). A planning board may consider factors outside a subdivision, including those pertaining to safety, accessibility and traffic, where such factors are relevant to the requirements of the Subdivision Control Law or local regulations. *Id.* at 437.

The Supreme Judicial Court has interpreted G. L. c. 41, § 81Q, as requiring that subdivision regulations be "comprehen-

sive, reasonably definite, and carefully drafted, so that owners may know in advance what is or may be required of them." *Castle Estates, Inc.* v. *Park & Planning Bd. of Medfield*, 344 Mass. 329, 334 (1962). Although broad in connotation, the language of a planning board regulation that calls for "adequate access" within a subdivision and in the adjacent public ways is valid and consistent with the intent of G. L. c. 41, § 81M. *North Landers Corp.*, 382 Mass. at 445.

The subdivision rules and regulations mirror the language of G. L. c. 41, § 81M. They specifically provide that the powers of the board shall be exercised with "due regard for the provision of adequate access to all of the lots in a subdivision by ways that will be safe and convenient for travel; for lessening congestion in such ways and in the adjacent public ways; . . . and for coordinating the ways in a subdivision with . . . the public ways in the city or town in which it is located and with the ways in neighboring subdivisions." The subdivision rules and regulations state that the definitive subdivision plan shall set forth "the location, names and widths of streets adjacent to or within proximity of the subdivision." They also provide that "[t]he Applicant shall demonstrate that roads and ways *to* and within the subdivision are adequate to provide emergency medical, fire and police protection as well as safe travel for the volume of traffic projected. A report shall be submitted estimating the traffic flow from the subdivision at peak periods in relation to existing traffic on the streets in and *adjacent to* the subdivision." (Emphasis added.)

Pursuant to § 81M, the board had an obligation to consider the adequacy of roads outside the defendants' proposed subdivision in deciding whether to approve their plan. Furthermore, the provisions of the subdivision rules and regulations indicate a reasonably definite intention on the part of the board to lessen congestion and potentially dangerous conditions on roadways adjacent to a proposed subdivision. Contrast *Fairbairn* v. *Planning Bd. of Barnstable*, 5 Mass. App. Ct. 171, 179 (1977).

The judge concluded that Rattner had produced sufficient evidence to show that the southwest road would be used as access to the subdivision. The defendants had posted signs to their property along the southwest road, the defendants' family had paid for the maintenance of the southwest road, and their mailbox was located at the beginning of the road.

Rattner also produced evidence that the increase in traffic

resulting from the subdivision would interfere with his property rights. An affidavit from Harry R. Jones, an engineer, stated that the current substandard condition of the southwest road would deteriorate further as a result of increased traffic to and from the proposed subdivision and that there would be a greater likelihood for accidents and for delays of emergency vehicles along that road. Further, the distance over unpaved roads was shorter if the southwest road was used. See note 3, *supra*. Rattner also presented findings of the board (originating from an unrelated matter) that the southwest road was "not of sufficient width, and/or suitable grades, and/or adequate construction to provide for the needs of vehicular traffic in relation to the proposed use of the land abutting thereon or served thereby."[4] Rattner made a sufficient showing that the subdivision would likely cause congestion and deterioration of the southwest road and adversely affect his property interests, or, in the words of the statute, that he was aggrieved.

When the board approved the defendants' final subdivision plan, it voted to waive strict compliance with its subdivision rules and regulations pertaining to road improvements. General Laws c. 41, § 81R, inserted by St. 1953, c. 674, § 7, provides, in pertinent part, that "[a] planning board may in any particular case, where such action is in the public interest and not inconsistent with the intent and purpose of the subdivision control law, waive strict compliance with its rules and regulations." Moreover, a planning board is not required to set forth in writing the findings upon which it bases its determination that a waiver of compliance with its rules and regulations is appropriate. *Wheatley* v. *Planning Bd. of Hingham*, 7 Mass. App. Ct. 435, 439 n.8 (1979).

The board stated that it was waiving strict compliance with its subdivision rules and regulations pertaining to road improvements because of the limited number of lots shown on the subdivision plan and the defendants' agreement that Lots 1-3 would not be subdivided further. However, as we have noted, Rattner has presented credible evidence to show that the use of the southwest road as access to the defendants' proposed subdivision would not be adequate for the resulting vehicular traffic. Accordingly, Rattner has established the existence of a triable issue as to whether the board's waiver of strict compli-

[4]Paul's Point Road, the southeast access to the defendants' parcel, was also on the list of inadequate roads.

ance with its subdivision rules and regulations pertaining to road improvements is in the public interest and is consistent with the intent and purpose of the Subdivision Control Law.[5]

In light of our determinations that the board had a duty to evaluate the adequacy of certain roads outside the defendants' proposed subdivision that would be used for access to the subdivision, and that Rattner made a sufficient showing that such use would likely cause injury to his property for purposes of being aggrieved by the board's decision, he had standing to appeal that decision. The judge erred in granting the defendants' motion for summary judgment. The judgment of the Superior Court is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

[5]General Laws c. 41, § 81M, inserted by St. 1953, c. 674, § 7, sets forth the purpose of the Subdivision Control Law and provides, in pertinent part, as follows:

> "The subdivision control law has been enacted for the purpose of protecting the safety, convenience and welfare of the inhabitants of the cities and towns in which it is, or may hereafter be, put in effect by regulating the laying out and construction of ways in subdivisions providing access to the several lots therein, but which have not become public ways, and ensuring sanitary conditions in subdivisions and in proper cases parks and open areas."