ELIZABETH E. KRAFCHUK & another[1] vs. PLANNING BOARD OF
IPSWICH & others.[2]

No. 06-P-1073.

Essex. March 9, 2007. - October 12, 2007.

Present: PERRETTA, BROWN, & CYPHER, JJ.

Further appellate review granted, 451 Mass. 1108 (2008).

*Administrative Law,* Standing. *Subdivision Control,* Appeal, Approval of plan.

Sufficient evidence supported a Superior Court judge's finding that abutters
had standing to appeal a local planning board's approval of a definitive
subdivision plan. [486-487]

Landowners failed to demonstrate that a town planning board's failure to act
on their definitive subdivision plan (filed to obtain the benefit of a grand-
fathering provision shortly before the town changed the requirements for
minimum lot size) resulted in a constructive approval, where the landown-
ers acquiesced to the board's extended deliberations and took no timely ac-
tion to secure the necessary certificate from the town clerk [487-489]; and
where, even assuming that there had been a constructive approval, the
board subsequently proceeded in accordance with the provisions of G. L.
c. 41, § 81W, to rescind that approval [490]; therefore, the amended defini-
tive plan later filed by the landowners constituted a new plan and, as such,
was not entitled to the "zoning freeze" protection provided by G. L.
c. 40A, § 6 [491].

CIVIL ACTIONS commenced in the Superior Court Department
on February 7, July 11, and December 30, 2003, respectively.

After consolidation, the cases were heard by *Richard E. Welch,
III,* J.

*Douglas H. Wilkins* for Edward P. Fagan & another.

*James G. Gilbert* for the plaintiffs.

CYPHER, J. The defendants, Edward P. and Anna M. Fagan,
appeal from a Superior Court judgment vacating the approval
of their definitive subdivision plan by the planning board of
Ipswich (board).[3] They argue that (1) the plaintiffs were without

_____

[1]Joseph A. Brear, Jr., trustee of Buttonwood Nominee Trust.

[2]Town of Ipswich, Edward P. Fagan, and Anna M. Fagan.

[3]Counsel for the board and the town of Ipswich gave notice to this court on

standing; (2) the circumstances of the processing of their subdivision plan entitled them to the benefit of the zoning freeze; and (3) the board properly granted the waivers at issue.

*Background.* The subdivision for seven residential lots proposed by the Fagans is on a twenty-three and one-half acre parcel of land with frontage on the easterly side of Heartbreak Road in a rural area of Ipswich. The lots range in size from a little over one acre to about six and one-half acres. Access to the approximately nineteen-foot wide two-lane Heartbreak Road would be through a T-shaped intersection with the proposed Blue Spruce Drive in the subdivision. Approximately thirteen acres of the parcel are wetlands on which a conservation restriction would be placed, and will not be developed. Throughout this case, two principal issues arose because of the concerns of the abutting plaintiffs over the safety of the intersection and the impact of the subdivision on endemic flooding and drainage problems in the area, which is unsewered and lacks storm drains.

*Procedural history.* The Fagans submitted a preliminary subdivision plan to the board on October 5, 2001. They sought to obtain the benefit of a "grandfathering" provision in G. L. c. 40A, § 6, fifth par., before the town changed its zoning by-law ten days later to increase minimum lot sizes from one to two acres.[4] The preliminary plan was denied on March 7, 2002, and the Fagans submitted a definitive plan on May 3, 2002. Public hearings were held through nine dates during 2002. At a hearing on January 8, 2003, the board voted to disapprove the plan, and filed its decision with the town clerk on January 21, 2003. The plaintiffs timely appealed to the Superior Court.

The Fagans thereafter asserted that the definitive plan had been constructively approved because the board failed to act within ninety days after its submission on May 3, 2002. After a hearing on May 8, 2003, the board voted to rescind the constructive approval, and readopted its decision of January 8, 2003, fil-

July 24, 2006, that they had not participated in the Superior Court trial from which this appeal was taken, and would not be filing an appellate brief.

[4]That change would affect two adjacent lots in the proposed subdivision, each a little over one acre in size.

ing that decision with the town clerk on June 23, 2003. The plaintiffs again timely appealed to the Superior Court.[5]

The Fagans subsequently requested a further hearing, and hearings were held by the board on four dates through December 4, 2003. At the hearing on December 4, 2003, the board voted to revoke its prior disapproval and to approve the amended plan that the Fagans submitted on October 23, 2003. That decision was filed with the town clerk on December 12, 2003. The plaintiffs again appealed to the Superior Court on December 30, 2003. Following the consolidation of that appeal on July 23, 2004, with the plaintiffs' two previous appeals, the case proceeded to trial.

*The Superior Court decision.* Threading his way through what the judge described as an "astounding number of documents" introduced in evidence; "extensive factual stipulations"; "extensive testimony"; and "assorted dueling experts" during the March, 2006, four-day bench trial, the judge ruled that the board's disapproval on May 8, 2003, effectively ended the protection of G. L. c. 40A, § 6 (sometimes referred to as zoning freeze). The judge also ruled that the board's purported approval of the plan on December 4, 2003, was in excess of its authority, as was its granting of certain waivers from local subdivision rules and regulations. Accordingly, on March 10, 2006, the judge ordered that the board's decision of December 4, 2003, be reversed and vacated; that the waivers granted in the board's decisions of January 8 and May 8, 2003, be vacated; and that judgment be entered for the plaintiffs. This appeal by the Fagans ensued.

*Discussion.* 1. *Standing.* General Laws c. 41, § 81BB, provides that any person who is aggrieved by a planning board's decision regarding a subdivision plan may appeal to the Superior Court. In determining "who is an aggrieved person in the subdivision context, zoning decisions under G. L. c. 40A, § 17, provide guidance." *Rattner* v. *Planning Bd. of W. Tisbury*, 45 Mass. App. Ct. 8, 10 (1998). See Bobrowski, Massachusetts Land

---

[5]The plaintiffs explain the anomalous nature of this and their previous appeal by indicating that while the board's decisions, on the surface, appeared favorable to them, those decisions included purported waivers of subdivision regulations that they challenged.

Use & Planning Law § 16.03[A] (2d ed. 2002) ("the court has equated standing in zoning and subdivision disputes"). "An abutter enjoys the benefit of a rebuttable presumption of aggrievement. . . . Once the abutter's standing is challenged and evidence is offered to support the challenge, the presumption recedes and the burden of proof shifts to the abutter, who must come forward with specific facts to support his assertion of status as an aggrieved person." *Rattner* v. *Planning Bd. of W. Tisbury*, 45 Mass. App. Ct. at 10. "In this context, standing becomes, then, essentially a question of fact for the trial judge." *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, 421 Mass. 719, 721 (1996).

We are satisfied that there was sufficient credible evidence to support the judge's finding that one of the abutters, plaintiff Elizabeth E. Krafchuk, demonstrated a "particular and individualized" potential of harm with respect to water run-off and the safety of the intersection of the proposed subdivision's roadway with Heartbreak Road. See *ibid.* ("plaintiff must put forth credible evidence to substantiate [her] allegations"). With regard to the other plaintiff abutter, Buttonwood Nominee Trust, we agree with the judge's determination that the Fagans produced nothing to rebut the presumption that that abutter was an aggrieved party. There was no error in the judge's findings that the plaintiffs have standing in this case.

*2. The zoning freeze.* The Fagans argue that their amended plan is entitled to grandfather protection because certain inaction by the board during the review of their original definitive plan resulted in a constructive approval that constituted final approval under G. L. c. 40A, § 6, fifth par., thereby securing the eight-year zoning freeze.[6]

As noted previously, following the disapproval of their

---

[6]The relevant portion of G. L. c. 40A, § 6, fifth par., as amended by St. 1982, c. 185, provides:

"If . . . a preliminary plan followed within seven months by a definitive plan, is submitted to a planning board for approval under the subdivision control law, . . . the land shown on such plan shall be governed by the applicable provisions of the zoning ordinance or by-law . . . in effect at the time of the first such submission while such plan or plans are being processed under the subdivision control law, and, if such definitive plan or an amendment thereof is finally ap-

preliminary plan, the Fagans submitted a definitive plan on May 3, 2002, just two days within the seven-month window provided by G. L. c. 40A, § 6, fifth par. Review of that definitive plan continued from June 20, 2002, through numerous subsequent public hearings. During that time the Fagans submitted two amended definitive plans, one on November 6, 2002, and the second on December 19, 2002. The Fagans acquiesced to the continued hearings until the board met on January 8, 2003. In a discussion of appropriate action to be taken by the board at that meeting, Edward Fagan requested that a vote be taken because he did not intend to withdraw the application and resubmit it. The board voted to disapprove the plan. Soon after that disapproval, the Fagans asserted that the failure of the board to act on the plan within ninety days after the filing of the definitive plan on May 3, 2002, resulted in a constructive approval on August 1, 2002, under G. L. c. 41, § 81U.[7] The board met on March 27, 2003, to consider the Fagans's assertion of constructive approval. At that meeting, counsel for the Fagans represented to the board that the Fagans would not act on the constructive approval claim. The board nevertheless decided to schedule a public hearing, and after one continuation, voted on May 8, 2003, to rescind the constructive approval and reinstate its decision of January 8, 2003.

The belated assertion that the plan was constructively approved is without merit. The Fagans treated the board's actions prior to January 8, 2003, as continuing steps in the review process. "The intention of relevant sections of the Subdivision Control Law is to set up an orderly procedure for definitive action within stated times . . . so that all concerned may rely upon recorded action or the absence thereof within such times."

---

proved, for eight years from the date of the endorsement of such approval."

[7]General Laws c. 41, § 81U, fifth par., as inserted by St. 1986, c. 699, § 2, provides:

"The failure of a planning board either to take final action or to file with the city or town clerk a certificate of such action on the definitive plan within ninety days after such submission, or such further time as may be agreed upon at the written request of the applicant, shall be deemed to be an approval thereof. Notice of such extension of time shall be filed forthwith by the planning board with the city or town clerk."

*Selectmen of Pembroke* v. *R. & P. Realty Corp.*, 348 Mass. 120, 125 (1964). Thus, the failure to file a certificate of final action (or of extension of time) with the town clerk pursuant to G. L. c. 41, § 81U, effects a constructive approval of the plan, even where a board subsequently purports to act on the plan. See *id.* at 126-128; *Kay-Vee Realty Co.* v. *Town Clerk of Ludlow*, 355 Mass. 165, 169 (1969); *Stoner* v. *Planning Bd. of Agawam*, 358 Mass. 709, 714 (1971).

However, as between the applicant and a planning board, a failure to file the required notice or certificate with the town clerk will not effect constructive approval where the applicant is aware of the board's further deliberations, and the board's eventual action is a final decision from which an appeal can be taken under G. L. c. 41, § 81BB. See and compare *Pieper* v. *Planning Bd. of Southborough*, 340 Mass. 157, 162 (1959); *Selectmen of Pembroke* v. *R. & P. Realty Corp.*, 348 Mass. at 124; *Kay-Vee Realty Co.* v. *Town Clerk of Ludlow*, 355 Mass. at 169. Cf. *Pinecrest, Inc.* v. *Planning Bd. of Billerica*, 350 Mass. 336, 338-339 (1966); Bobrowski, Massachusetts Land Use & Planning Law § 15.03[B], at 494 n.57.[8] Moreover, the Fagans took no timely action to claim constructive approval by securing a certificate from the town clerk under G. L. c. 41, § 81V. Constructive approval is not self-actuating.[9] We think that in these circumstances, the Fagans cannot claim constructive approval based on the failure to file a notice of extension of time with the town clerk, where they acquiesced to the board's extended deliberations, and they took no timely action to secure the necessary certificate from the town clerk.

---

[8]Contrast *Craig* v. *Planning Bd. of Haverhill*, 64 Mass. App. Ct. 677, 678-679 (2005) (plan deemed constructively approved because notice of extension of time and board's final decision were not timely filed with town clerk; appeal by plaintiff, an opponent of plan, a nullity because not filed within twenty days of date of constructive approval).

[9]At trial, the Fagans submitted an affidavit of the town clerk, dated February 24, 2006, stating that there were no filings by the Fagans or the board during the ninety days after submission of the definitive plan, nor was any appeal filed subsequently. The Fagans request that we consider this affidavit sufficient to substitute for a timely issued certificate under G. L. c. 41, § 81V. There is no authority cited for this request, which appears to have no legal merit, and we do not consider it. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

Furthermore, even assuming there was a constructive approval of the plan in this case, the board proceeded under the provisions of G. L. c. 41, § 81W, as amended through St. 1977, c. 473, to " 'modify, amend or rescind' . . . the constructively approved plan." *Windsor* v. *Planning Bd. of Wayland,* 26 Mass. App. Ct. 650, 656 (1988).[10] The board's vote to rescind complied with all procedural requirements, see *Vitale* v. *Planning Bd. of Newburyport,* 10 Mass. App. Ct. 483, 487 (1980), and annulled the constructive approval.[11] See *Windsor* v. *Planning Bd. of Wayland, supra* at 656, and cases cited (§ 81W provides "a well-worn, although a rather circuitous way out of [a] blunder" by the board).[12]

---

[10]On July 10, 2003, the Fagans filed a complaint in Land Court seeking a ruling that the constructive approval was valid, and challenging the board's decision to rescind. It is undisputed that there has been no activity in that case since the filing of an answer on May 7, 2004. Citing *Massachusetts Broken Stone Co.* v. *Weston,* 430 Mass. 637, 639-642 (2000), and *Arenstam* v. *Planning Bd. of Tyngsborough,* 29 Mass. App. Ct. 314, 317 (1990), the judge recognized that "normally" he would wait for the Land Court's decision before ruling on the case before him. However, he concluded that he did not have to wait in this case because "[t]he parties have presented all the issues to this court for decision," and his ultimate finding that the planning board should not have approved the amended plan "has the effect of rendering the Land Court case moot."

In their brief to this court, the Fagans merely note that their "pending Land Court case challenges the May, 2003 rescission of the constructive approval." They have not argued that the filing of the case in the Land Court preserved any of their rights, nor have they asserted any authority. For those reasons we do not further consider this issue. Mass.R.A.P. 16(a)(4).

[11]Although there may appear to be a metaphysical aspect to the board's rescission of an inchoate constructive approval, since the board's rescission action was accompanied by the readoption of its January 8, 2003, disapproval, there is no longer any question of the legal status of the plan.

[12]The Fagans further assert that rescission of the constructive approval did not end the zoning freeze. Their reliance on *Heritage Park Dev. Corp.* v. *Southbridge,* 424 Mass. 71, 75 (1997), is misplaced. In that case, there had been a final approval of a definitive plan, and the eight-year zoning freeze under G. L. c. 40A, § 6, fifth par., was secured. *Id.* at 74-75. A covenant provided that approval of the subdivision would be automatically rescinded if certain groundwork was not completed by a specified date; the developer was unable to complete the groundwork as required. *Id.* at 73. The operation of that rescission did not affect the zoning freeze. The Supreme Judicial Court stated that whether a subdivision approval is rescinded automatically or under G. L. c. 41, § 81W, "[w]hatever subdivision control the board may exercise cannot operate to deprive [the applicant] of the zoning protection it secured

Following the May 8, 2003, vote to rescind the constructive approval, the Fagans requested further hearings, and filed an amended definitive plan on October 23, 2003, which was ultimately approved on December 4, 3003. Because the amended definitive plan was filed more than seven months after the preliminary plan (filed October 5, 2001), it must be treated as a new plan, and is not entitled to the zoning freeze protection provided by G. L. c. 40A, § 6. This result is explained in *Arenstam* v. *Planning Bd. of Tyngsborough*, 29 Mass. App. Ct. 314, 317 (1990):

> "The apparent purpose of the requirement of § 6 that the definitive plan be submitted within seven months of the date the preliminary plan was filed is to give the developer a reasonable time to work out details of an approvable plan with the planning board and the board of health, while at the same time avoiding an open-ended suspension of zoning amendments that are adopted by the town during the subdivision plan approval process. It is true that § 6 refers to a 'definitive plan or an amendment thereof [which] is finally approved'; and that G. L. c. 41, § 81U, puts no limit on the time a developer has to amend his plan so as to meet the board's reasons for disapproval. To preserve the sense of § 6, its reference to amended definitive plans must be read to apply only to those amended plans filed with the board within the seven-month period after submission of the preliminary plan. '[A]ny definitive plan, filed more than seven months after a preceding preliminary plan, is to be treated as a new plan, which gains protection under [G. L. c. 40A,] § 7A[, the predecessor of today's § 6,] only from the date when it is filed and not as of the date of the filing of the preliminary plan.' *Green* v. *Board of Appeal of Norwood*, 358 Mass. 253, 257 n.4 (1970)."[13]

3. *Remaining issues.* Since the amended plan filed on October

[previously]." *Id.* at 75 & n.6. In the present case, no zoning freeze had been secured, and we need not pursue this matter.

[13]We do not consider whether an amended definitive plan filed within seven months of the preliminary plan, but after final action disapproving the definitive plan, would operate to preserve the zoning freeze.

23, 2003, was not protected by the zoning freeze, the board could not have approved it, and we need not reach the merits of the board's decision. Cf. *Windsor* v. *Planning Bd. of Wayland,* 26 Mass. App. Ct. at 655 ("If one tried to appeal solely from the late-filed approved plan, the appeal would be a nullity because the plan was a nullity").

*Judgment affirmed.*