RICHARD E. TERRILL, trustee,[1] & another[2] *vs.* PLANNING
BOARD OF UPTON.

No. 06-P-1711.

Suffolk. November 8, 2007. - February 6, 2008.

Present: CYPHER, VUONO, & GRAINGER, JJ.

*Subdivision Control,* Approval of plan. *Mortgage. Fraud. Bona Fide Purchaser.*

In a civil action where the plaintiffs sought to annul the rescission of a
  subdivision plan by the defendant town planning board (board), the Land
  Court judge properly granted summary judgment in favor of the plaintiffs,
  because the board failed to fulfil its obligation under G. L. c. 41, § 81W,
  to obtain the consent of the bank holding a mortgage secured by the
  subdivision land and obtained after the constructive approval certificate
  had issued [173-175]; moreover, the board offered no facts to detract from
  the bank's having acquired its interest in the land in good faith and for
  valuable consideration [175-177].

CIVIL ACTION commenced in the Land Court Department on
March 8, 2004.

The case was heard by *Charles W. Trombly,* J., on a motion
for summary judgment, and a motion for relief from judgment
was heard by him.

*Patricia A. Cantor* (*Robert H. McKertich* with her) for the
defendant.

*Jeffrey L. Roelofs* for the plaintiffs.

CYPHER, J. In February of 2004, the planning board (board) of
the town of Upton (town) rescinded the constructive approval
of a subdivision plan, which approval had been secured by
plaintiff Richard E. Terrill, as trustee of the Route 140 Upton
Realty Trust, and plaintiff Upton Milford Street Realty, LLC
(collectively, plaintiffs). See G. L. c. 41, § 81W. The plaintiffs

---

[1] Of the Route 140 Upton Realty Trust.

[2] Upton Milford Street Realty, LLC.

filed an appeal in the Land Court seeking to annul the rescission on the ground that the board had not obtained the consent of the bank holding a mortgage secured by the subdivision land and obtained after the constructive approval certificate had been issued. A Land Court judge allowed the plaintiffs' motion for summary judgment and ordered the rescission annulled. The board appeals, claiming it was not required to obtain the bank's consent. We affirm.

*Background.* After submitting an application for approval of a preliminary subdivision plan on November 13, 2002, the plaintiffs, on August 26, 2003, submitted a definitive plan for a subdivision comprising fifty-nine lots on approximately eighty-three acres of land (locus) in Upton. Because the board's first public hearing on the plaintiffs' application was scheduled for November 18, 2003, only six days before the statutory ninety-day review deadline, G. L. c. 41, § 81U, fifth par., the board and the plaintiffs agreed to extend the review deadline to December 23, 2003, in order to permit the plaintiffs to respond to comments on the plan made by the board's consultant. The plaintiffs then filed a revised definitive plan and supplemental materials on December 8, 2003. At a meeting on December 23, 2003, the board voted to deny approval of the plan. No certificate of this action was filed with the town's clerk. On January 20, 2004, the plaintiffs requested that the clerk issue a certificate of constructive approval, see G. L. c. 41, § 81V. A certificate was issued on January 28, 2004.[3]

The plaintiffs obtained a construction loan commitment from the Framingham Cooperative Bank (bank) on January 30, 2004, and granted the bank a mortgage, secured by the subdivision. The loan was closed on February 2, 2004.

At a public hearing on February 17, 2004, the board voted to rescind the constructive approval.[4] A certificate of that decision was filed with the town's clerk on February 25, 2004.[5]

The plaintiffs' appeal to the Land Court resulted in the allow-

---

[3] The certificate and the definitive plan were recorded in the Worcester County registry of deeds on January 29, 2004, in conformity with G. L. c. 41, § 81X. See *Stoner* v. *Planning Bd. of Agawam*, 358 Mass. 709, 714 (1971).

[4] The board belatedly wrote to the bank on February 19, 2004, requesting its consent so the board could proceed with the rescission. The bank did not consent.

[5] The board recorded its certificate of rescission in the Worcester County

ance of their motion for summary judgment. The judge ruled that the board's rescission was a nullity because it failed to obtain the consent of the bank, as required by G. L. c. 41, § 81W, second par.

In this appeal, the board argues that the plaintiffs did not prove that the lots in the subdivision were mortgaged in good faith and for a valuable consideration, and accordingly, the board could rescind the approval without obtaining the bank's consent.

*Discussion.* With the same summary judgment materials as were before the Land Court judge, we review the facts according to the well-known principles recited in *Community Natl. Bank* v. *Dawes,* 369 Mass. 550, 553-554 (1976).

There is no factual dispute in this case that the plaintiffs' subdivision plan was constructively approved, or that a board has statutory authority to rescind such approvals. See, e.g., *Selectmen of Pembroke* v. *R. & P. Realty Corp.,* 348 Mass. 120, 128-129 (1964); *Windsor* v. *Planning Bd. of Wayland,* 26 Mass. App. Ct. 650, 656 (1988). However, where an owner has mortgaged the subdivision after approval, a rescission must not "affect the lots in such subdivision which have been . . . mortgaged in good faith and for a valuable consideration . . . without the consent of the owner of such lots, and of the holder of the mortgage . . . ." G. L. c. 41, § 81W, second par., as appearing in St. 1977, c. 473.[6]

1. We first address the board's preliminary argument that,

registry of deeds on March 4, 2004, twelve days before the expiration of the statutory appeal period, see G. L. c. 41, § 81BB. The certificate erroneously stated that the consent of the owner and the holder of the mortgage both had been obtained. A certificate cannot be accepted for recording without such a statement. G. L. c. 41, § 81X, fifth par. In view of our decision, these defects are of no further consequence.

[6]The entire second paragraph of G. L. c. 41, § 81W, as appearing in St. 1977, c. 473, states:

"No modification, amendment or rescission of the approval of a plan of a subdivision or changes in such plan shall affect the lots in such subdivision which have been sold or mortgaged in good faith and for a valuable consideration subsequent to the approval of the plan, or any rights appurtenant thereto, without the consent of the owner of such lots, and of the holder of the mortgage or mortgages, if any, thereon; provided, however, that nothing herein shall be deemed to prohibit such modification, amendment or rescission when there has been a sale to a single grantee of either the entire parcel of land shown on the subdivi-

because the mortgage document indicates that the entire locus was mortgaged, and not "the lots," as specified in the statute, the board claims that it was not precluded from rescinding the approval without the bank's consent. The board, however, appears to conflate the language in § 81W that states, "No . . . rescission . . . shall affect the lots in such subdivision which have been . . . mortgaged," with the language of the subsequent proviso that rescission is not prohibited where "there has been a sale to a single grantee of either the entire parcel of land shown on the subdivision plan or of all the lots not previously released by the planning board."

The judge addressed this argument, and we think his analysis particularly apt. He noted that the statutory history of the proviso in § 81W is significant. The proviso was added to the second paragraph of § 81W by St. 1973, c. 605. As fully set forth in the margin,[7] the proviso did not prohibit rescission where there "is a conveyance or a mortgage to a single grantee or mortgagee." The proviso subsequently was amended, however, by St. 1977, c. 473, which eliminated the language "is a conveyance or a mortgage to a single grantee or mortgagee," and substituted the present language, "has been a sale to a single grantee." Accordingly, a mortgage on an entire parcel, once vulnerable to rescission without the mortgagee's consent, is now, since the 1977 amendment, protected by § 81W from rescission without the mortgagee's consent.

The present case appears to be similar to *Murphy* v. *Planning Bd. of Norwell*, 5 Mass. App. Ct. 393 (1977). In *Murphy*, rescission of the 1968 approval of a definitive plan for land subdivision was annulled because the plaintiff and his mortgagee did not consent to the rescission. *Ibid*. The mortgage had been

---

        sion plan or of all the lots not previously released by the planning
        board."

    [7]The proviso, added by St. 1973, c. 605, stated, before its revision in 1977:
    "provided, however, that nothing herein shall be deemed to prohibit such
    modification, amendment or rescission where there is a conveyance or a
    mortgage to a single grantee or mortgagee of either the entire parcel of land
    shown on the subdivision plan or of all the lots not previously released by the
    planning board."

granted on the entire tract of land in 1972.[8] *Id.* at 394. Apparently, the planning board of Norwell sought to rely on G. L. c. 41, § 81W, as amended by St. 1973, c. 605, which did "not prohibit rescission when there has been a conveyance or a mortgage of the entire parcel of land shown on the subdivision plan," *Murphy, supra,* but the court ruled, *id.* at 397-398, that the amended statute could not be applied retroactively such that under § 81W, as appearing in St. 1953, c. 674, § 7, consent of the plaintiff and his mortgagee was required. See generally Bobrowski, Massachusetts Land Use & Planning Law § 15.05 (2d ed. 2002). We conclude that where a board seeks to rescind an approved subdivision plan that has been mortgaged, the consent of the mortgagee is required.[9]

2. Next, the board argues that the plaintiffs failed to prove the mortgage was entered into in good faith, questioning the good faith of both the plaintiffs and the bank and asserting that they had knowledge of the board's intent to disapprove the plan, and that that knowledge undermined their good faith.

Section 81W, as appearing in St. 1977, c. 473, requires that rescission must not "affect the lots in such subdivision which have been sold or mortgaged in good faith and for a valuable consideration." The concept of good faith has not been defined in our subdivision jurisprudence. Accordingly, we look to the well-known concept in conveyancing practice of "good faith purchaser," which appears to be particularly relevant in this case.[10]

---

[8]There is no merit to the board's assertion that the mortgage was not on the lots in the subdivision. The recorded subdivision plan is clearly referenced, and the total of fifty-nine lots identified. For the purposes of § 81W, we discern no meaningful difference between a mortgage on the entire tract and a mortgage on individual lots.

[9]The history of § 81W establishes that the Legislature sought to guard against modifications that "impaired the marketability of titles acquired by bona fide purchasers from subdividers." *Patelle* v. *Planning Bd. of Woburn,* 20 Mass. App. Ct. 279, 282 (1985). Where, as in the present case, the board purported to rescind the plan altogether, rather than modifying it, the effect on the bank's rights could be seen as drastic. See *id.* at 283. The statutory requirement that the bank's consent be required also is justified because the bank would not have notice of a rescission action; just as those who purchased lots before rescission, those who purchased after rescission would have no occasion to monitor filings in a registry of deeds. Those purchasers ought to be free from any post hoc impairment of property rights without their consent.

[10]A "good faith purchaser" has been defined as a "bona fide purchaser":

We first review the factual background concerning the mortgage. In a telephone inquiry to the town's clerk on January 14, 2004, the plaintiffs' engineer learned that the board had not filed a certificate of final action by December 23, 2003, as required by G. L. c. 41, § 81U, second par. The plaintiffs, believing the board's failure to file the certificate constituted constructive approval, conveyed this information to the bank, in support of an application for a construction loan. The bank arranged for an appraisal of the locus, which was performed on January 20, 2004. A copy of the certificate of constructive approval was transmitted to the bank on January 28, 2004, the same day it was filed in the town's clerk's office. The plaintiffs obtained a commitment letter from the bank on January 30, 2004, and the loan was closed on February 2, 2004.

This factual background indicates that the bank, an established commercial institution, relied on the certificate of constructive approval, the recorded subdivision plan, an appraisal, and common commercial documents. We conclude from these facts that the mortgage was granted in an arms-length transaction involving valuable consideration, and there were no adverse claims of record apparent either to the bank or to the plaintiffs. Moreover, the purpose of the transaction was to secure a loan, the proceeds of which would be used for construction of the subdivision.

The board has not offered any facts to support the fact, or an inference, of sham or fraud in the transaction. "When a motion for summary judgment is made and supported . . . an adverse party may not rest upon the mere allegations . . . of his pleading, but his response . . . must set forth specific facts showing that there is a genuine issue for trial." Mass.R.Civ.P. 56(e), 365 Mass. 824 (1974). *Madsen* v. *Erwin*, 395 Mass. 715, 719 (1985). An attack on good faith is akin to an allegation of fraud, and requires affirmative proof. Cf. *Barron* v. *International Trust Co.*, 184 Mass. 440, 443 (1903).

The board also asserts that the plaintiffs and the bank knew

---

"One who buys something for value without notice of another's claim to the property and without actual or constructive notice of any defects in or infirmities, claims, or equities against the seller's title; one who has in good faith paid valuable consideration for property without notice of prior adverse claims." Black's Law Dictionary 1271 (8th ed. 2004).

at least by January 20, 2004, that the board intended to disapprove the subdivision, yet the plaintiffs "cavalierly" proceeded to obtain the mortgage "presumably" to frustrate the rescission process. These characterizations of the steps taken by the plaintiffs and the bank fail to raise any question that their actions were anything less than the exercise of their rights under the subdivision control law, as set forth in G. L. c. 41, §§ 81K-81GG. The board relies only on its own actions, which came too late and were ineffective in preventing the operation of constructive approval.[11] Knowledge of those futile actions cannot prevent a landowner's proper resort to the procedures and record actions under the subdivision control law.

"[T]he bulk of decisions dealing with constructive approval feature a land owner who relies upon and defends a constructive approval." *Windsor* v. *Planning Bd. of Wayland,* 26 Mass. App. Ct. at 654. Any intent to disapprove a plan will be ineffective to prevent constructive approval without the filing of a certificate of final action before the expiration of the statutory review period. See *Kay-Vee Realty Co.* v. *Town Clerk of Ludlow,* 355 Mass. 165, 168-169 (1969), and cases cited.

"The intention of relevant sections of the Subdivision Control Law is to set up an orderly procedure for definitive action within stated times, and for notice of that action in offices of record within stated times, so that all concerned may rely upon recorded action or the absence thereof within such times." *Selectmen of Pembroke* v. *R. & P. Realty Corp.,* 348 Mass. at 125. Our recent decisions continue to stress strict adherence to the procedures in the subdivision control law. See, e.g., *Krafchuk* v. *Planning Bd. of Ipswich,* 70 Mass. App. Ct. 484, 488-490 (2007); *Kitras* v. *Zoning Administrator of Aquinnah,* 70 Mass. App. Ct. 561, 564-566 (2007).

*Conclusion.* Where a mortgagee's interest is acquired in good faith and for valuable consideration, rescission of a prior con-

---

[11]At a meeting on January 13, 2004, the board approved the form of a certificate of disapproval, and filed that certificate, unsigned, with the town's clerk on January 15, 2004. The town's clerk faxed a copy of this certificate to the plaintiffs' engineer on January 20, 2004. This filing had no legal effect, and the plaintiffs were not required to rely on it.

structive approval is a nullity without the consent of the mortgagee. The statute mandates such consent.

*Judgment affirmed.*

*Order denying defendant's motion for relief from judgment affirmed.*